*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0270P (6th Cir.)
File Name: 00a0270p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

BEVERLY A. SEYMOUR,
       *Petitioner-Appellant,*

    *v.*

                  No. 98-4316

DIANE WALKER,
       *Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 96-00763—John D. Holschuh, District Judge.

Submitted: May 3, 2000

Decided and Filed: August 16, 2000

Before: MOORE and GILMAN, Circuit Judges;
McKEAGUE,[*] District Judge.

———————————

**COUNSEL**

**ON BRIEF:** Laurence R. Snyder, ASSISTANT
ATTORNEY GENERAL, CORRECTIONS LITIGATION

———————————

[*] The Honorable David W. McKeague, United States District Judge
for the Western District of Michigan, sitting by designation.

SECTION, Cleveland, Ohio, for Appellee. Beverly Seymour, Columbus, Ohio, pro se.

————————————

**OPINION**

————————————

KAREN NELSON MOORE, Circuit Judge. After a jury trial, Beverly Seymour was convicted on November 29, 1990, of voluntary manslaughter and of a firearm specification for the shooting death of her ex-husband, Richard Reams. She brought a pro se petition for habeas corpus pursuant to 28 U.S.C. § 2254 in the U.S. District Court for the Southern District of Ohio, raising forty-six claims of error, principally involving ineffective assistance of counsel, illegal search and interrogation techniques, prosecutorial misconduct, faulty jury instructions, and various alleged due process violations. The district court denied the petition, and on appeal Seymour raises fourteen claims of error, which attempt to incorporate most of the forty-six claims raised before the district court. For the reasons discussed below, we **AFFIRM** the district court's denial of the petition for habeas corpus.

## I.  BACKGROUND

By her own admission, petitioner Beverly Seymour shot and killed her ex-husband, Richard Reams, on August 27, 1990. Reams had arrived at Seymour's apartment that day while Seymour was not at home, shortly after he received a judgment awarding him custody of their daughter Tessa. Seymour testified at trial that, when she arrived in the apartment, Reams (who had allegedly physically abused Seymour in the past) attacked her, and that she attempted to frighten him with her gun, which she grabbed from the kitchen table, but that the gun fired without her realizing or intending it. Seymour's uncle testified, however, that although he lived in an adjoining apartment, separated by only one door, he heard the gunshot but no screaming or arguments. After the shooting, Seymour checked into a motel

however, the district court's judgment denying Seymour's petition is **AFFIRMED**.

and attempted to commit suicide by swallowing a large quantity of aspirin. She was later hospitalized.

On September 14, 1990, Seymour was indicted by a grand jury in Pickaway County, Ohio, for one count of murder with a firearm specification. After a jury trial, she was convicted of voluntary manslaughter and of the firearm specification. Seymour was sentenced to a prison term of eight to twenty-five years on the manslaughter charge, plus an additional three years on the firearm specification, to be served consecutively. Through new counsel, Seymour appealed her conviction to the Ohio Court of Appeals for the Fourth Appellate District, raising twelve claims of error; Seymour also supplemented her counsel's brief with a pro se brief that raised an additional fifteen claims. The court of appeals affirmed the conviction. *See State v. Seymour*, No. 90 CA 38, 1993 WL 472875 (Ohio Ct. App. Nov. 9, 1993), *appeal dismissed*, 632 N.E.2d 519 (Ohio 1994). With the help of yet another attorney, Seymour raised six claims before the Ohio Supreme Court, which dismissed her appeal as presenting no substantial constitutional question. Acting pro se, Seymour filed a motion for reconsideration in the Ohio Supreme Court, arguing that the counsel who represented her before that court was ineffective due to his failure to raise a number of claims enumerated by her. The motion was denied without opinion. While her direct appeal was still pending, Seymour filed a habeas corpus petition in the U.S. District Court for the Southern District of Ohio, claiming only that her appeal bond was excessive. That court dismissed the habeas petition on the merits. On August 2, 1996, Seymour filed the instant petition, raising forty-six claims of error. In a lengthy opinion, the district court considered all of Seymour's claims, finding some of them to be procedurally defaulted and the remainder to be without merit. Seymour timely appealed, and a Certificate of Appealability was granted as to all issues.

## II. ANALYSIS

### A.  Standard of Review

This court reviews the district court's legal conclusions de novo and its findings of fact for clear error.  *See Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000).  Because Seymour's habeas petition was filed after the Antiterrorism and Effective Death Penalty Act (AEDPA) became effective on April 24, 1996, the provisions of that act apply to Seymour's case and prescribe the appropriate standard of review.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Harris*, 212 F.3d at 942.  Under AEDPA, a writ of habeas corpus shall not issue unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

Noting that AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court," the Supreme Court illuminated the meaning of § 2254(d)(1) in *Williams v. Taylor*, ---U.S.---, 120 S. Ct. 1495 (2000).  *Id.* at ---, 120 S. Ct. at 1523.  A state-court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at a different result.  *Id.* at ---, 120 S. Ct. at 1519.  A state-court decision involves an unreasonable application of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or if the state court either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context.  *Id.* at ---, 120 S.

district court, following *Lindh v. Murphy*, 521 U.S. 320 (1997) (holding that AEDPA is applicable only to cases filed after the act's effective date of April 24, 1996), correctly applied AEDPA to Seymour's habeas petition, which was filed on August 2, 1996.  Since this change in the law "neither made criminal a theretofore innocent act, nor aggravated a crime previously committed, nor provided a greater punishment, nor changed the proof necessary to convict," its application to Seymour does not violate the Ex Post Facto Clause.  *Dobbert v. Florida*, 432 U.S. 282, 293 (1977).

### J.  Claim Twelve:  Due Process Based on Procedural Default

In her twelfth claim, Seymour argues that she was denied due process by the district court's failure to rule on all of her claims due to procedural default.  We conclude that the district court's application of the procedural default rules articulated by the Supreme Court did not violate Seymour's due process rights.

### K.  Claims Thirteen and Fourteen:  Ex Post Facto and Equal Protection Challenges to Parole Procedures

In her final two claims, Seymour challenges the procedures by which parole decisions are made by the Ohio Department of Corrections as violative of the Equal Protection and Ex Post Facto Clauses of the United States Constitution.  Although Seymour raised these claims in her state postconviction proceeding, she did not raise them before the district court in the present habeas petition, and no certificate of appealability was issued with respect to them.  Therefore, we may not consider them.  *See* 28 U.S.C. § 2253(c); *United States v. Watroba*, 56 F.3d 28, 29 (6th Cir.), *cert. denied*, 516 U.S. 904 (1995).

### III.  CONCLUSION

Seymour's motion to supplement the record with her brief and the state's brief from the state-court postconviction proceedings is **GRANTED**.  For the foregoing reasons,

however, violates the defendant's Fifth Amendment rights. *See Combs v. Coyle*, 205 F.3d 269, 283 (6th Cir. 2000). Therefore, the relevant question is whether the prosecutor used Seymour's silence for impeachment purposes or as substantive evidence of guilt.

We hold that the prosecutor's statement does not fall within the scope of the *Combs* holding. Although the prosecutor made this statement in his closing argument, while commenting on all the evidence against Seymour, rather than during his cross-examination of Seymour (where an intent to impeach would have been more evident), we believe that the overall context of the argument demonstrates that the comments on Seymour's silence were used primarily to shed doubt on her defense of self-defense, not to intimate guilt. Unlike Combs, Seymour chose to testify in her own defense and to propound a theory of self-defense. The prosecutor therefore had a legitimate interest in impeaching her testimony and in not allowing Seymour to use the Fifth Amendment as a sword rather than a shield. *See id.* at 281, 285. Despite the prosecutor's description of Seymour's silence as "an indication of guilt," the most logical understanding of his remarks is as an attempt to use Seymour's prearrest silence to undermine her theory of self-defense. Especially given the deferential standard of review that we must apply under § 2254(d)(1), we cannot say that the Ohio Court of Appeals's decision to reject this claim is contrary to, or an unreasonable application of, clearly established federal law as articulated by *Jenkins*.

## 2. Cumulative Error

Given the foregoing, Seymour is not entitled to relief based on a theory of cumulative error.

## I. Claim Ten: Applicability of AEDPA

Seymour argues that the district court erred by applying AEDPA, claiming that the application of that statute to her case violates the Ex Post Facto Clause of the U.S. Constitution. This claim is entirely without merit. The

Ct. at 1520. The reasonableness of the state court's opinion is judged by an objective rather than subjective standard. *See id.* at ---, 120 S.Ct. at 1521-22; *Harris*, 212 F.3d at 942-43.

## B. Claim One: Procedural Default and Ineffective Assistance of Appellate Counsel

When a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state-court remedies are still available or due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review. *See Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Picard v. Connor*, 404 U.S. 270, 275-78 (1971). A petitioner may avoid this procedural default only by showing that there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case. *See Sykes*, 433 U.S. at 87, 90-91.

The district court found that several of Seymour's claims were procedurally defaulted due to her failure to raise them in the Ohio state courts. Seymour claims that this finding was incorrect. She argues that, to the extent that her claims were purportedly defaulted due to her failure to raise them on direct appeal, she has repeatedly claimed ineffective assistance of appellate counsel, which constitutes "cause" to excuse her procedural default. Specifically, Seymour argues that she received ineffective assistance because her appellate counsel was forced to limit his brief to thirty-five pages, and therefore had to eliminate a number of claims from the appeal; because her appellate counsel's motion to correct errors in the transcript of the proceedings was denied; and because she was unable to communicate with her counsel during an eight-day period of time while the appellate brief was being prepared and filed.

We treat the question of procedural default more fully below, in connection with our examination of the individual

claims that are alleged to be defaulted.  However, we first briefly address the question, common to many of the procedural default issues, whether the ineffective assistance of Seymour's appellate counsel can serve as cause to excuse Seymour's default of those claims that she failed to raise in the state courts.

If Seymour could show that she received ineffective assistance of appellate counsel that rose to the level of a violation of her Sixth Amendment rights, it would excuse her procedural default.  *See, e.g.*, *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  The Supreme Court explained the requisite showing for ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687.  Seymour has not made this showing.  The page limitations imposed by the state on appellate briefs, the state's denial of Seymour's motion to correct the record, and Seymour's temporary inaccessibility do not amount to constitutionally deficient performance by Seymour's counsel. Moreover, the allegedly ineffective assistance of Seymour's appellate counsel cannot be considered to be cause for Seymour's procedural default, because that claim of ineffectiveness was not properly presented to and ruled on by the Ohio courts.  The ineffective-assistance-of-appellate-counsel claim is therefore itself procedurally defaulted and, since Seymour has not shown cause and prejudice for that default, cannot serve as cause for Seymour's procedural default on the underlying constitutional claims. *See Edwards v. Carpenter*, ---U.S.---, 120 S. Ct. 1587, 1591 (2000).

446 (6th Cir. 1999) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974)).  In determining whether Seymour's due process rights were violated, this court looks at the totality of the circumstances, including

> the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

*Id.*  Seymour has not shown that her due process rights were burdened by the prosecutor's comment.  The prosecutor did no more than comment on the defense's evidence, which he is permitted to do.  Nor was this relatively isolated comment on the defense's case extensive, misleading, or otherwise fundamentally unfair.  Seymour therefore cannot show that the state court's actions were contrary to or an unreasonable application of Supreme Court precedent.

Seymour also objects to the prosecutor's comments on her prearrest silence, made during closing arguments.  In particular, the prosecutor stated:

> I submit to you if the defendant had gone to the Sheriff's Office or to the Ashville Police Department immediately, after shooting Richard Reams, it would be in her police report.  Look here, prosecutor, she said she did it in 'self-defense,' in her police report, if she went straight to the police department and told them what happened, that I did it in self-defense, but you don't see anything like that. They will argue fleeing from the scene is not evidence of guilt.
> I submit that it is an indication of guilt.

J.A. at 1904 (Tr. of Closing Argument).  The Supreme Court has held that a defendant's prearrest silence may be used for impeachment purposes.  *See Jenkins v. Anderson*, 447 U.S. 231, 238, 240 (1980).  This circuit has recently held that the use of prearrest silence as substantive evidence of guilt,

above, we conclude that the trial court did not violate Seymour's due process rights through cumulative error.

## H. Claim Eight:  Prosecutorial Misconduct

Seymour presented several claims of prosecutorial misconduct to the district court, four of which the district court correctly found to be procedurally barred, due to Seymour's failure to present them to the Ohio Court of Appeals.[9]  We also conclude that a fifth claim was not raised before the Ohio Court of Appeals and therefore was defaulted.[10]  We consider the remainder of Seymour's claims below.

### 1.    Closing Argument:  Comments on Julie Buskirk's Failure to Testify and on Seymour's Prearrest Silence

Seymour argues that the prosecutor committed misconduct by commenting on the failure of Seymour's sister, Julie Buskirk, to testify in her defense and by commenting on Seymour's prearrest silence.

As to the prosecutor's comments on Julie Buskirk, the state appeals court concluded that they were not improper under Ohio law, *see Seymour*, 1993 WL 472875, at *12-13, and this court must defer to that conclusion.  In order to show that she is entitled to habeas corpus relief, Seymour must show that the prosecutor's conduct was "so fundamentally unfair as to deny [her] due process." *Kincade v. Sparkman*, 175 F.3d 444,

---

[9] Those instances of alleged misconduct were 1) failure to preserve Seymour's shirt as evidence; 2) failure to preserve other evidence; 3) failure to photograph Seymour's bruises immediately after the shooting; 4) charging Seymour with the firearm specification in violation of her Second Amendment rights.

[10] Seymour claimed for the first time in her Motion for Reconsideration before the Ohio Supreme Court that the prosecutor improperly concealed from the jury the fact that he was present during the sheriff's interrogation of Seymour.

Because the problems discussed by Seymour are not actually "errors" attributable to her counsel, however, Seymour's argument is perhaps better understood as a claim that the three factors she enumerated were "objective factor[s] external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule," which would also be capable of excusing procedural default. *Carrier*, 477 U.S. at 488.  This formulation would not change our analysis of Seymour's claim.  First, with respect to the page limit on appellate briefs, as the district court explained, Seymour was allowed to file a pro se brief in the Ohio Court of Appeals, in addition to her counsel's brief, and all fifteen of her pro se claims were considered by that court.  Moreover, the page limit "merely limited the manner in which [Seymour] could present [her] arguments; it did not wholly prevent [her] from presenting them." *Weeks v. Angelone*, 176 F.3d 249, 271 (4th Cir. 1999), *aff'd*, --U.S.--, 120 S. Ct. 727 (2000); *cf. Hill v. Norris*, 96 F.3d 1085, 1087-88 (8th Cir. 1996).  Nor has Seymour made any showing that the page limit should not have been enforced in her case in particular; thus, in the absence of any such particularized showing, it would appear that Seymour's argument is that the existence of a page limit on state court appellate briefs could always be sufficient cause to excuse a procedural default.  Such a result would clearly be extreme, and out of line with the Supreme Court's attitude of tolerance toward such limitations and insistence that counsel need not raise every conceivable colorable claim on appeal in order to fulfill his duty to his client. *See generally Jones v. Barnes*, 463 U.S. 745, 750-54 (1983).

Second, Seymour has not shown how the state court's refusal to grant her motion to correct the record constitutes cause for any procedural default.  Although her counsel argued in his brief before the Ohio Court of Appeals that there were material errors in the transcript that prejudiced Seymour's appeal, he did not point to a single such error.  This vague and conclusory assertion cannot suffice to demonstrate cause for Seymour's procedural default.  Similarly, Seymour has not shown that her inability to communicate with her counsel for a period of several days

during the preparation of her appellate brief constitutes cause for her procedural default. She has not demonstrated that she was unable to raise certain claims as a result of this lack of communication, for example — especially in light of the fact that she was permitted to file her own pro se brief raising fifteen claims. Moreover, more than a year appears to have elapsed between the appointment of Seymour's appellate counsel and the filing of her appellate brief in the Ohio Court of Appeals; Seymour has not shown why the eight-day period of no communication shortly before the filing of the brief was particularly critical in her case. Seymour has not succeeded in showing cause for her procedural default.

### C. Claims Two and Three: Incorrect Review of Facts and Evidentiary Materials

In her second and third claims, Seymour argues that the district court "incorrectly applied evidence and facts proving self-defense, raised at trial, and did not *impartially* review the facts and testimony," and that the district court did not "make a full review of Petitioner's claims, by failing to examine all the documentation supporting and proving her claims." Pet'r Br. at a. Seymour appears to suggest that she was entitled to a de novo review by the district court of the evidence adduced at trial.

28 U.S.C. § 2254(e)(1), however, provides that state court factual findings are entitled to a presumption of correctness on habeas review. The district court quoted the state appeals court's factual findings in its opinion, thereby according the required respect to those findings. Although the petitioner may rebut the presumption of correctness by "clear and convincing evidence," 28 U.S.C. § 2254(e)(1), Seymour has failed to do so. Her arguments shed some doubt on the credibility of certain witnesses and give interpretations of conflicting evidence that differ from the interpretations of the state court. However, in light of the deference to be accorded to state-court factfinding under § 2254(e), as well as the traditional deference accorded to the jury's resolution of disputed factual issues, Seymour's arguments are not

REV. CODE §§ 2903.02, 2903.03 (Baldwin 1999); *State v. Tyler*, 553 N.E.2d 576, 591-92 (Ohio), *cert. denied*, 498 U.S. 951 (1990); *see generally Schmuck*, 489 U.S. at 718; *cf. Schad v. Arizona*, 501 U.S. 624, 636-37 (1991) (noting that federal courts may not second-guess a state court's decision as to what constitutes an element of a crime under a state statute). The voluntary manslaughter instruction therefore did not violate Seymour's due process rights.

### 4. Great Bodily Harm

Seymour argues that the trial court gave an inadequate self-defense instruction, implying that Seymour had to be in fear of death, rather than in fear of other forms of serious bodily harm, in order to use deadly force against Reams. The Ohio Court of Appeals found that the instruction given by the trial court accurately reflected Ohio self-defense law. *See Seymour*, 1993 WL 472875, at \*20. Since this issue has no apparent federal constitutional implications, we cannot question the state court's decision.

### 5. Burden of Proof

Seymour claims that the trial court's instruction unconstitutionally shifted to her the burden of proving the mens rea of voluntary manslaughter, by requiring her to prove by a preponderance of the evidence that she was under the influence of rage or passion. Examining the relevant Supreme Court precedent, this court has previously upheld against a due process challenge Ohio's scheme of requiring the defendant to prove this mitigating circumstance. *See Rhodes v. Brigano*, 91 F.3d 803, 808-10 (6th Cir. 1996), *cert. denied*, 520 U.S. 1254 (1997). Therefore, we cannot now hold that the instruction was contrary to or an unreasonable application of Supreme Court precedent.

### 6. Cumulative Error

Seymour also claims that the cumulative error of the trial court's instructions amounted to a violation of her due process rights. Given our disposition of the claims discussed

## 2. Duty to Retreat

Seymour claims that the trial court failed properly to instruct the jury that there is no duty to retreat from one's own home under the Ohio law of self-defense. A review of the jury instructions indicates, however, that the trial judge did in fact tell the jury, "There is no duty to retreat from one's home." J.A. at 1993 (Tr.). Moreover, the Ohio Court of Appeals found that this instruction accurately reflected Ohio law, *see Seymour*, 1993 WL 472875, at *31-32, and it is not for this court to question the state court's interpretation of its own law. *See Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988), *cert. denied*, 488 U.S. 1011 (1989).

## 3. Lesser Included Offense

Seymour claims that the trial court erred in instructing the jury on the lesser included offense of voluntary manslaughter over her objection and despite her request that the jury be instructed only on murder. The Ohio Court of Appeals held that the instruction was proper, and indeed required, under Ohio law, *see Seymour*, 1993 WL 472875, at *16-18, and this court cannot question that holding, *see Allen*, 845 F.2d at 614.

A defendant's due process rights may be violated if the jury is instructed on an offense not included in the indictment and the defendant did not have notice that she might be charged with that offense. *See, e.g.*, *Schmuck v. United States*, 489 U.S. 705, 717-18 (1989). However, several federal courts have held that an instruction on a lesser included offense may be given over the defendant's objection, because the defendant has sufficient notice, when charged with the greater offense, that she may also have to defend against the lesser charge. *See, e.g.*, *Fransaw v. Lynaugh*, 810 F.2d 518, 529 (5th Cir.), *cert. denied*, 483 U.S. 1008 (1987); *United States v. Stolarz*, 550 F.2d 488, 491-93 (9th Cir.), *cert. denied*, 434 U.S. 851 (1977); *Asherman v. Meachum*, 739 F. Supp. 718, 720-21 (D. Conn.) (Cabranes, J.) (citing cases), *aff'd*, 923 F.2d 845 (2d Cir. 1990). Under Ohio law, manslaughter is a lesser included offense of murder, since the elements of manslaughter are included in the offense of murder. *See* OHIO

sufficient to demonstrate the incorrectness of the state court's findings by clear and convincing evidence. Furthermore, it borders on the absurd to suggest that the district court did not fully consider all the evidence before it, in light of the district court's carefully reasoned and supported opinion.

## D. Claim Four: Due Process

Next, Seymour complains that she was deprived of due process by the government's presentation of a "surprise" rebuttal witness and the trial court's refusal to allow her to call a witness to rebut that witness's testimony. The district court found that the trial court did not err in allowing the state to call two witnesses to rebut Seymour's testimony.

"[E]rrors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding." *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (quoting *Patterson v. New York*, 432 U.S. 197, 202 (1977)); *see also Spencer v. Texas*, 385 U.S. 554, 563-64 (1967).

In contending that the trial court violated her due process rights by allowing the state to call a "surprise" rebuttal witness, Seymour appears (based on the district court's interpretation of her claim) to be referring to the two nurses who testified, respectively, that Seymour never requested an attorney while she was in the hospital and that Seymour stated, of her ex-husband, "[I]n all probability he isn't dead yet." J.A. at 1873 (Kaspowicz Test.).

As the district court correctly found, the testimony of the two nurses was admissible to rebut Seymour's testimony. Seymour testified that she didn't know that Reams had been shot, but that at some point later in the evening of August 27 she learned from her sister that there had been an "accident"

at the apartment. Seymour also testified that she never said to the nurse that Reams was probably not dead yet. Finally, Seymour testified that she requested an attorney while she was in the hospital. Although Seymour lacked notice of these witnesses' testimony, the district attorney informed the trial court that he had just become aware of the witnesses that day and therefore could not have made their names available to Seymour any sooner. Furthermore, as the district court pointed out, Seymour's attorney apparently did not request a continuance to prepare to respond to the new testimony. In light of the wide latitude afforded to states with regard to evidentiary matters under the Due Process Clause, this court cannot say, under the relevant Supreme Court precedent, that Seymour's due process rights were violated by the state's introduction of the testimony of those rebuttal witnesses. *Cf. Gray v. Netherland*, 518 U.S. 152, 166-70 (1996) (rejecting a habeas petitioner's due process challenge to the state's failure to give him sufficient notice of its intent to use certain evidence at trial, concluding that such a challenge would require the adoption of a new rule of constitutional law).

Seymour also claims that the trial court violated her constitutional rights when it refused to permit her to call a surrebuttal witness, her friend Kay Neve, who was also at the hospital and would testify as to what the nurses said that Seymour said. The trial court did not state on the record its reasons for denying Seymour's request for surrebuttal. However, this court need not reach the merits of this claim in any case, because Seymour did not raise it in any subsequent state court proceeding, and it appears that it can now no longer be considered by a state court. Since Seymour cannot show cause for this procedural default, *see supra* Part II.B., this claim is barred. In any case, we do not believe that the trial court's ruling, even if erroneous, would rise to the level of a due process violation.

### E. Claim Five:    Unconstitutional Arrest and Interrogation

Seymour claims several Fourth and Fifth Amendment

### G. Claims Seven and Eleven: Jury Instructions

Seymour objects to the trial court's jury instructions on several grounds. Some of these grounds are defaulted, because Seymour did not raise them before the Ohio Court of Appeals, or because the court of appeals reviewed them only for plain error due to Seymour's failure to comply with Ohio's contemporaneous objection rule.[8] *See Seymour*, 1993 WL 472875, at *18, *32; *see also State v. Underwood*, 444 N.E.2d 1332, 1333 (Ohio 1983). Controlling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules. *See Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989) (stating that the state court's review of a claim for "manifest injustice" did not constitute a waiver by the state of its contemporaneous objection rule). *But see Engle v. Isaac*, 456 U.S. 107, 135 n.44 (1982) (suggesting that review for plain error might constitute waiver of a state procedural bar). Those claims that have not been defaulted are discussed below.

#### 1. Reasonable Doubt

Seymour objects to the trial court's instruction defining "proof beyond a reasonable doubt," in part, as "proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs." J.A. at 1970 (Tr.). The Supreme Court has approved a nearly identical instruction in *Holland v. United States*, 348 U.S. 121 (1954). *See id.* at 140. We therefore cannot say that the decision to uphold this instruction was contrary to or an unreasonable application of Supreme Court precedent.

---

[8]Those claims were that the trial court erred by failing to instruct on "honest mistake," by failing to give a proper mens rea instruction, by giving an incorrect instruction on reasonable doubt, by giving confusing and contradictory instructions, by incorrectly instructing the jury that the government had to prove beyond a reasonable doubt that Seymour was acting under the influence of a sudden passion or fit of rage in order to convict her of manslaughter, and by permitting the jury to listen to the 911 tapes of Reams's call to the police.

### 5. Failure to Introduce Evidence of Battered Woman Syndrome

Ohio law officially recognizes the existence of "battered woman syndrome" (BWS) and provides that expert testimony regarding BWS may be presented at trial to help establish, as an element of self-defense, that the defendant believed herself to be in imminent danger of death or great bodily harm. *See* OHIO REV. CODE § 2901.06 (Baldwin 1999). Seymour argues that her counsel was ineffective for failing to present such evidence. In Exhibit I to her habeas petition, Seymour painstakingly laid out specific elements of the syndrome and listed the portions of the record that support a finding of each of those elements.

Although it seems that expert testimony on BWS would have been admissible in Seymour's trial, we cannot say that Seymour's counsel was unconstitutionally deficient for failing to present such evidence. The conclusion that the outcome of the trial would have been different if this evidence were presented is simply too speculative — especially in light of the facts that Seymour was no longer involved in the abusive relationship and that Seymour herself had acted violently toward Reams prior to the shooting, *see Seymour*, 1993 WL 472875, at *6. Seymour therefore has not shown prejudice due to her counsel's failure to introduce expert testimony on BWS. *Cf. State v. Sallie*, 693 N.E.2d 267, 271 (Ohio 1998) (holding that in certain circumstances "the lack of expert testimony on battered woman syndrome can be considered a sound, reasonable trial strategy" and does not necessarily demonstrate deficient performance or prejudice).

### 6. Cumulative Error

Because the individual claims of ineffectiveness alleged by Seymour are all essentially meritless, Seymour cannot show that the cumulative error of her counsel rendered him ineffective.

violations relating to her arrest and interrogation. Seymour's Fourth Amendment claims — regarding the legality of her arrest at the hospital, the permissibility of Sheriff Radcliff's pursuing her outside his jurisdiction without a warrant, and of the validity of the search of Seymour's automobile — are not cognizable on habeas corpus review. Seymour does not, and cannot, claim that the State of Ohio did not provide her with a full and fair opportunity to litigate her Fourth Amendment claims; indeed, she did so in a suppression hearing before trial. Therefore, she cannot obtain habeas relief based on any alleged illegal search or seizure. *See Stone v. Powell*, 428 U.S. 465, 494 (1976).

Seymour also challenges the trial court's failure to suppress the statements that she made to Sheriff Radcliff while in the hospital.[1] In particular, Seymour claims that she did not receive *Miranda* warnings before being interrogated in the hospital and that her requests for an attorney were repeatedly denied. Furthermore, she suggests that she was too ill or drugged to give a voluntary statement to Sheriff Radcliff at that time, and that Sheriff Radcliff unfairly used his friendship with her to induce her to make a statement to him.

Our first inquiry under the Fifth Amendment is whether Sheriff Radcliff advised Seymour of her *Miranda* rights.[2] Examining the conflicting testimony on the issue, the trial court made a factual finding that the *Miranda* warnings were administered to Seymour. Given the credibility assessment

---

[1] Before the district court, Seymour also objected to the prosecutor's presence in the hospital room during the interrogation and the subsequent concealment of this fact at trial. However, it is unclear what kind of violation of federal law Seymour is claiming in this respect, and she does not appear to engage the issue in her appellate brief. Therefore, we do not address this claim. Moreover, to the extent that Seymour attempts to make out a claim of prosecutorial misconduct on this basis, we note below that this claim is procedurally barred. *See infra* note 10.

[2] The trial court made a finding that Seymour was in custody when she was interrogated at the hospital, and that finding has not been challenged.

required to make such a determination and the deference due to state-court factual findings under AEDPA, we cannot say that the trial court's finding was unreasonable under § 2254(d)(2).

The trial court also found that Seymour waived her *Miranda* rights during the interrogation. As the district court explained, this is a more problematic finding.[3] A defendant's waiver of *Miranda* rights must be found, based on the totality of the circumstances, to be voluntary, knowing, and intelligent. *See Moran v. Burbine*, 475 U.S. 412, 421 (1986). The state has the burden of proving the voluntariness of the waiver by a preponderance of the evidence, but there must be an element of police coercion in order for a waiver to be found involuntary. *See Colorado v. Connelly*, 479 U.S. 157, 169-71 (1986). The trial court appears to have based its finding of a valid waiver on the fact that Seymour proceeded to talk to Sheriff Radcliff after hearing the *Miranda* warnings.

Sheriff Radcliff's testimony demonstrates that it is a close question whether Seymour in fact waived her rights. Although Radcliff stated that Seymour "acknowledged she would talk with" him, that he "felt confident in knowing her understanding of what [he] was saying," J.A. at 764 (Tr. of Hr'g on Mot. to Suppress), and that Seymour told him that she did not want a lawyer, he did not obtain an express written or verbal waiver, despite having waiver forms nearby. Moreover, Radcliff gave vague, subjective answers when questioned as to how he knew that Seymour had waived her rights:

---

[3]In the due process context, the Supreme Court has explained that voluntariness of a confession is a question of law, reviewed under § 2254(d)(1), and the "subsidiary factual questions" surrounding the confession are reviewed deferentially under § 2254(d)(2) and § 2254(e)(1). *Miller v. Fenton*, 474 U.S. 104, 110-12 (1985); *see also Thompson v. Keohane*, 516 U.S. 99, 110-13 (1995) (noting that discerning the "circumstances surrounding the interrogation" and drawing other conclusions that require credibility determinations generally implicate issues of fact, but that the voluntariness of a confession and the waiver of the right to counsel involve questions of law).

### 3.  Failure to Call Julie Buskirk

Seymour attached to her habeas petition an affidavit from Julie Buskirk, in which Buskirk states that she had personal knowledge of many matters relevant to Seymour's defense and that, had she been called to testify, she would have contradicted the testimony of several prosecution witnesses. Seymour claims that this demonstrates that her counsel was ineffective for failing to call Buskirk. Although Buskirk's testimony may indeed have bolstered Seymour's defense, this court cannot say that Seymour's counsel was defective for failing to call her. Buskirk cannot be considered an essential witness by any means: she was not a witness to the shooting, and, as the sister of the defendant, would likely be considered by the jury to be biased. To consider Seymour's counsel defective for failing to call her to testify would be to engage in precisely the kind of second-guessing of trial strategy that the Supreme Court strongly discouraged in *Strickland*. *See id.* at 689-90. This claim must therefore fail.

### 4.  Failure to Move to Suppress Evidence

Seymour argues that her counsel was ineffective for failing to move to suppress the evidence gathered when the police entered her apartment without a warrant immediately after the shooting. As the district court correctly explained, the police were not required to obtain a warrant when entering Seymour's apartment in response to the emergency phone call from Reams, because they reasonably believed that Reams was in need of immediate assistance. *See Mincey v. Arizona*, 437 U.S. 385, 392-93 (1978). Furthermore, it does not appear that the search exceeded the officers' plain view, *see id.* at 393: the only fruits of the search were Reams's statement that Seymour shot him because of their daughter and the fact that there appeared to be no struggle in the apartment. This evidence thus should not have been suppressed, and Seymour cannot show defective performance or prejudice due to her counsel's failure to move for suppression. *See Strickland*, 466 U.S. at 687.

procedurally defaulted, because Seymour did not raise them before the Ohio Court of Appeals. Although the Ohio Supreme Court rejected Seymour's claims without an opinion, this court must assume that the rejection rested on adequate and independent state-law grounds, because the Ohio Supreme Court's summary order does not "fairly appear" to rest on federal law. *Coleman v. Thompson*, 501 U.S. 722, 740 (1991). As noted above, Seymour has not shown cause for her default.

We next address the merits of Seymour's non-defaulted claims.

## 2.  Failure to Object to Prosecutorial Misconduct

Seymour argues that her counsel was ineffective for failing to object to certain improper remarks of the prosecutor. Seymour objects primarily to the prosecutor's comments on the fact that Seymour's sister, Julie Buskirk, did not testify. Seymour claims that Buskirk was present and willing to testify in Seymour's defense, but that her counsel did not call her. Seymour also objects to the prosecutor's comments on certain missing evidence, such as Seymour's purse.

As we discuss at greater length below, *see infra* Part II.H.1., we conclude that those remarks were not improper. Moreover, Seymour has not shown that objecting to the prosecutor's remarks would have changed the outcome of her case; indeed, the allegedly offensive remarks were not extensive or flagrant. *Cf. United States v. Dakota*, 197 F.3d 821, 828 (6th Cir. 1999). Therefore, Seymour cannot show prejudice as required by *Strickland*.[7] *See Strickland*, 466 U.S. at 687.

---

[7]Seymour points to Exhibits F and G to her habeas petition, containing an affidavit of Julie Buskirk and a survey of the jurors' impressions, respectively, as demonstrating prejudice. Because the prosecutor's remarks were not improper, however, it is irrelevant whether they influenced the jurors' perceptions.

On into the waiver, she agreed to talk to me. She understood what she was talking about. I thought she knew me and I felt comfortable that if she would have said she didn't understand her rights, knowing her in the past, she would have said such. She continued on. In my opinion, I fulfilled what is on this form as far as the waiver is concerned.

J.A. at 780-81. Furthermore, as the Ohio Court of Appeals found, Seymour was in the intensive care unit at the time of questioning, having attempted to commit suicide by ingesting a large quantity of aspirin. Seymour was released shortly afterwards, however, and Sheriff Radcliff received permission from the hospital staff before questioning Seymour. *See Seymour*, 1993 WL 472875, at *11. Finally, Sheriff Radcliff also testified that, although he had been friends with Seymour, he told her that he was acting both in his official capacity and as a friend.

The Supreme Court has emphasized that waiver cannot be inferred from silence or from the fact that the defendant ultimately confesses. *See, e.g., North Carolina v. Butler*, 441 U.S. 369, 372-73 (1979). Waiver may in some cases be inferred, however, from "the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver." *Id.* at 373. In light of the closeness of the question, the trial court's finding cannot be said to be contrary to or an unreasonable application of *Butler* and *Moran*. *See Williams*, ---U.S. at ---, 120 S. Ct. at 1522 (stating that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly," because the state court's application of federal law must also be unreasonable).

## F.  Claims Six and Nine:  Ineffective Assistance of Counsel

### 1.  Procedural Default

Seymour raised seventeen claims of ineffective assistance of counsel before the district court.  That court found that all but five of them were procedurally barred.  Seymour attempts to raise all of those claims again on appeal.

When deciding whether a claim has been procedurally defaulted, this court must first determine whether "there is a state procedural rule that is applicable to the petitioner's claim and [whether] the petitioner failed to comply with the rule." *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  Next, this court considers whether the procedural rule was actually enforced in the petitioner's case.  *See id.*  Finally, this court "must decide whether the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim." *Id.*  Ohio has a rule that claims must be raised on direct appeal if possible; otherwise, res judicata bars their litigation in subsequent state proceedings.  *See State v. Perry*, 226 N.E.2d 104 (Ohio 1967), syllabus para. 8, 9.  This rule was consistently applied in Seymour's case, and there has been no suggestion that it is not an adequate and independent state ground that can foreclose federal review.

Seymour's ineffective assistance of counsel claims fall into three categories.  First, there are those claims that she properly preserved by raising them before the Ohio Court of Appeals.  *See State v. Cole*, 443 N.E.2d 169 (Ohio 1982), syllabus (holding that defendants are required, when possible, to raise ineffective assistance of counsel claims on direct appeal to prevent procedural default).  Those claims are not defaulted.  In the second category are the claims that Seymour did not raise on direct appeal but raised in her petition for

postconviction relief.[4]  Those claims are defaulted, since they could have been raised on direct appeal and were not, *see id.*; *Perry*, 226 N.E.2d at syllabus para. 8, 9,[5] and since Seymour has not shown cause for the default, *see supra* Part II.B. Third, Seymour raised a number of ineffectiveness claims for the first time in her motion for reconsideration of the Ohio Supreme Court's judgment dismissing her appeal as raising no substantial constitutional question.[6]  Those claims, too, are

---

[4] The claims that Seymour raised for the first time on postconviction review are that her counsel was ineffective for 1) failing to call a number of defense witnesses, such as her employer, her divorce lawyer, and the lawyer who was representing Seymour in her custody appeal; 2) failing to call a witness who would testify that Seymour had bruises when she was first arrested (thus demonstrating that Seymour had struggled with Reams before shooting him); and 3) failing to call a witness to rebut the rebuttal testimony of the nurses who testified that Seymour did not ask for a lawyer and that Seymour speculated that Reams was not yet dead.

[5] Although the Ohio Court of Appeals, in reviewing Seymour's postconviction relief petition, considered those claims on the merits, it also made clear, *as an alternate holding*, that the claims were barred by res judicata, since they could have been raised on direct appeal and were not.  *See State v. Seymour*, No. 96 CA 41, 1997 WL 703394, at *2-3 (Ohio Ct. App. Oct. 29, 1997).  Thus, under the rule of *Harris v. Reed*, 489 U.S. 255 (1989), the state court has made it sufficiently clear that its decision was based on an "adequate and independent state ground" that precluded federal review.  *Id.* at 264 & n.10.

[6] The grounds for ineffectiveness raised for the first time in that motion were as follows:  1) failure to object to the indictment as violative of Seymour's Second Amendment rights; 2) failure to call the prosecutor as a witness regarding the illegality of Seymour's arrest and interrogation; 3) failure to inform the jury of the prosecutor's presence in the hospital room during Seymour's interrogation; 4) failure to call an expert witness regarding whether Seymour's medical state would have allowed her to waive her *Miranda* rights knowingly and voluntarily; 5) failure to arrange for an examination of Seymour's competency to stand trial; 6) failure to question or call any witnesses at trial on the mobility of the victim and the positioning of the victim's body, as supportive of Seymour's self-defense theory; 7) failure to question or call an expert witness as to whether the proximate cause of Reams's death was the gunshot wound or medical malpractice; 8) failure to obtain expert testimony regarding the condition of the pistol Seymour used and the possibility of accidental discharge.