File Name: 12a0831n.06

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 10-5270

## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

JOHNNIE WAYNE REEVES,

    Petitioner-Appellant,

v.

JAMES FORTNER, Warden,

    Respondent-Appellee.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE

_____/

BEFORE:    MARTIN and McKEAGUE, Circuit Judges; CALDWELL, District Judge.[*]

    BOYCE F. MARTIN, JR., Circuit Judge. Johnnie Wayne Reeves appeals the district court's decision denying his petition for a writ of habeas corpus and his request for an evidentiary hearing pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254. Reeves seeks relief from two state convictions of aggravated child abuse. Reeves contends that his trial counsel rendered ineffective assistance by failing to present the testimony of two alibi witnesses at trial. The district court granted Reeves's request for an evidentiary hearing, wherein Reeves presented testimony from the two alibi witnesses. After the hearing, the district court denied Reeves's habeas petition, finding that Reeves had not established a gateway claim of actual

_____

[*] The Honorable Karen K. Caldwell, United States District Judge for the Eastern District of Kentucky, sitting by designation.

innocence and had procedurally defaulted his ineffective assistance of counsel claim. The district

court certified Reeves's ineffective assistance of counsel claim for appellate review. Reeves filed

a timely appeal. On appeal, Reeves argues that the testimony of the two alibi witnesses makes a

showing of actual innocence and that this showing overcomes any procedural default of his

ineffective assistance of counsel claim. We **AFFIRM** the judgment of the district court.

I.

The Tennessee Court of Criminal Appeals, *Reeves v. State*, No. M2004-02642-CCA-R3-PC,

2006 WL 360380, at *1-*4 (Tenn. Crim. App. Feb. 16, 2006), provides a detailed summary of the

evidence adduced at Reeves's trial and post-conviction proceeding, and we need not recount those

details here. After a jury trial, Reeves was found guilty of choking a child with a dog leash and

hitting the victim on the buttocks with a wooden board. Reeves was convicted of two counts of

aggravated child abuse of a child six years of age or less. The incidents occurred on June 16, 2000.

At the trial, the victim's mother testified that she left the victim home alone with Reeves for about

two and one-half hours. When she returned to her home, she found the victim bruised. Law

enforcement personnel and other witnesses also testified at the trial. As the Tennessee Court of

Criminal Appeals, *id.*, recounted:

> [Reeves] testified that on Tuesday, June 13th, he traveled to Bowling Green, Kentucky, to visit his father, who was remodeling a Wal-Mart store. On Friday, June 16th, [Reeves], his father, Tyson Hall, and two other employees ate lunch together. After running errands, [Reeves] left Bowling Green at approximately 4:00 p.m. and arrived at his residence between 6:00 and 6:30 p.m. [Reeves] testified that on Sunday, June 18th, his cousins were killed in a car accident.
>
> Wayne Raymond Reeves, [Reeves's] father, testified that from May until July 2000, he was in Bowling Green, Kentucky, remodeling a Wal-Mart store. He stated

[Reeves] visited him during the week prior to June 18th. On Friday, June 16th, [Reeves's father], [Reeves], and Tyson Hall, [Reeves's father's] supervisor, ate lunch together, and [Reeves] remained with [his father] until 3:00 or 4:00 p.m. [Reeves's father] stated he saw [Reeves] later that night at the Reeves [family] residence in Tennessee. On June 18th, they discovered that two family members had been killed in a car accident.

Tyson Hall testified that while working at Bowling Green, he met [Reeves] and ate lunch with [Reeves] and [Reeves's father] on a Friday. Although Hall could not recall the specific date, he stated that two days later on Sunday, [Reeves's father] informed him that he had a death in the family.

The jury convicted the defendant of two counts of aggravated child abuse of a child six years of age or less, Class A felonies. *See* Tenn. Code Ann. § 39-15-402(b). The trial court sentenced him as a violent offender to twenty years on each count to be served concurrently.

The Tennessee Court of Criminal Appeals affirmed Reeves's convictions and sentences on direct appeal, and the Tennessee Supreme Court denied review. Reeves sought post-conviction relief. The trial court dismissed his petition and the Tennessee Court of Criminal Appeals affirmed that dismissal. Reeves filed a pro se petition for a writ of habeas corpus in the district court on February 9, 2007, and after appointment of counsel, filed an amended petition. The district court held an evidentiary hearing and dismissed the petition on February 18, 2010.

At the evidentiary hearing held by the district court, Reeves called two witnesses, neither of whom had been called at his trial, to testify. The first witness, Donny Gray, initially testified that he worked with Reeves in Bowling Green on June 18, 19, and 20, 2000. When reminded that he had previously told Reeves's attorney that he worked with Reeves on June 14, 15, and 16, Gray stated that the dates he had told counsel off the record and in his affidavit were correct, and agreed that if June 16 was a Friday then that would be consistent with Reeves being present in Bowling Green on

June 16. Gray also testified that he was with Reeves until mid- to late-afternoon on the day in question. When confronted with an affidavit in which he stated that Reeves left in the early afternoon of June 16, Gray eventually agreed that this is what his affidavit stated. Gray testified that Bowling Green is about a one hour and fifteen- or twenty-minute drive from Nashville.

The second witness, Jerry Rickard, testified that he worked with Reeves on June 15, 16, and 17. He recalled working with Reeves on a Friday, and that he worked with Reeves several times "off and on through the days," but that he could not recall the exact times that Reeves worked on those days.

Reeves argues that his trial counsel was ineffective for failing to call Gray and Rickard to testify at his trial. Reeves acknowledges that he has procedurally defaulted his ineffective assistance of counsel claim because he failed to present it before the Tennessee Court of Criminal Appeals but argues his claim of actual innocence excuses his procedural default. For the reasons stated below, we affirm the district court.

## II.

This Court reviews the district court's legal conclusions in a habeas proceeding de novo and reviews its factual findings under the clear-error standard. *Awkal v. Mitchell*, 613 F.3d 629, 638 (6th Cir. 2010) (en banc). This Court reviews the district court's denial of Reeves's petition for a writ of habeas corpus pursuant to the standards of review of state court determinations as set forth in the Antiterrorism and Effective Death Penalty Act of 1996. *See Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009). Under these standards as laid out in *Black v. Bell*, 664 F.3d 81, 90-91 (6th Cir. 2011) (quoting *Murphy*, 551 F.3d at 493-94):

[A] federal court may grant a writ of habeas corpus with respect to a "claim that was adjudicated on the merits in state court proceedings" if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A habeas petition may also be granted if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(2). A state-court decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams* [*v. Taylor*, 529 U.S. 362, 405 (2000)]. A state-court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," *id.* at 407–08, 529 U.S. 362, or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context," *Seymour v. Walker*, 224 F.3d 542, 549 (6th Cir. 2000).

A.      Actual Innocence

Reeves has acknowledged that he procedurally defaulted his alibi witness ineffective assistance of counsel claim by failing to present the claim to the Tennessee Court of Criminal Appeals. Reeves argues that he is nonetheless entitled to a review of his ineffective assistance claim on the merits because the new witness testimony he presented in the district court establishes a credible claim of actual innocence. The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to . . . argue the merits of his underlying claims." *Schlup v. Delo*, 513 U.S. 298, 316 (1995). The threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317. In order to establish actual innocence, the petitioner "must show that it is more

likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. Importantly, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). The Supreme Court has cautioned that the actual innocence exception should "remain rare" and "only be applied in the extraordinary case." *Schlup*, 513 U.S. at 321 (internal quotation marks omitted). An "actual innocence claim . . . is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Souter v. Jones*, 395 F.3d 577, 588-89 (6th Cir. 2005) (internal quotation marks omitted).

Reeves argues that testimony presented at the district court hearing supports a credible claim of actual innocence when coupled with the following evidence adduced at trial: (1) testimony from Reeves and his father that Reeves was in Bowling Green at the time the crime occurred in Nashville; (2) testimony that the victim's mother told a police detective that she had spanked the victim over his clothing on the morning of June 16 and that she believed that she had caused the injuries; (3) testimony from the victim's grandmother that the victim's mother initially provided false explanations for the victim's injuries, specifically a statement that the victim was tangled in a dog leash; and (4) testimony from the victim's grandmother that another individual who previously dated the victim's mother had abused both the victim and his mother.

While *Schlup* does not require "absolute certainty" about the innocence of a party in order to establish a credible claim of actual innocence, it is a "demanding" standard and "permits review only in the extraordinary case." *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks omitted). In *House*, the petitioner made a successful actual innocence claim because "the central

forensic proof connecting [the petitioner] to the crime . . . ha[d] been called into question, and [the petitioner] ha[d] put forward substantial evidence pointing to a different suspect." *Id.* at 554. We have also found that the actual innocence standard was met where a petitioner submitted new evidence showing that "[t]he only direct evidence linking" him to the victim's death—a small bottle of pills—could not likely have caused the injury that proved fatal to the victim. *Souter*, 395 F.3d at 597.

A review of the evidence presented by Reeves leads us to conclude that this is not one of the rare, extraordinary cases that warrants equitable tolling because of actual innocence. Gray first testified that he was with Reeves on June 18, 19, and 20, but later—upon prompting by Reeves's counsel—testified that he had actually been with Reeves on June 14, 15, and 16, and that he was with him until mid-to-late afternoon on June 16. In a separate affidavit, with which he was confronted at the hearing before the district court, Gray had stated that Reeves left Bowling Green in the early afternoon on June 16. Rickard testified only that he recalled working with Reeves on June 15, 16, and 17, and that he worked with him "off and on through the days." Because of the short distance between Bowling Green and Nashville, the testimony of Gray and Rickard placing Reeves in Bowling Green at some time in the afternoon on the day of the offense does not preclude his having been present in Nashville either before or after his appearance in Bowling Green that day. At trial, the victim's mother testified that she left Reeves alone with the victim from approximately 11:00 or 11:30 in the morning to 2:00 or 2:30 in the afternoon. The victim himself testified that Reeves assaulted him with a board and choked him with a dog leash, and the victim's mother and grandmother testified that they observed the victim's injuries shortly after Reeves was left alone with

the victim on June 16. Moreover, the victim's mother testified that Reeves admitted to the crime and Reeves himself initially told the police that he was present when the victim suffered his injuries, but that they were caused by the victim's mother. Reeves argues that there is sufficient doubt of his guilt because of evidentiary weaknesses, namely that the testimony of the victim's mother was self-serving, that the testimony of the grandmother may have been given to protect her daughter, and that the victim was unable to correctly identify Reeves in the courtroom. However, even taking into account these weaknesses of evidence, the testimony of Gray and Rickard is insufficient to establish a cognizable claim of actual innocence. The evidence Reeves presented to the district court at his hearing does not demonstrate that, had it been presented to the jury, it "is more likely than not that no reasonable juror would have found [Reeves] guilty beyond a reasonable doubt." *McCray v. Vasbinder*, 499 F.3d 568, 571 (6th Cir. 2007) (quoting *Schlup*, 513 U.S. at 327) (internal quotation marks omitted).

Because we conclude that Reeves has not met the standard required to excuse a procedural default by demonstrating evidence of actual innocence, we do not address Reeves's claim of ineffective assistance of counsel.

III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.