PEOPLE *v.* BIRTS

1. BURGLARY—BREAKING AND ENTERING—WORDS AND PHRASES—OC-
   CUPIED DWELLING.
   　Occupied dwelling as used in the statutory offense of breaking
   　　and entering an occupied dwelling refers to any dwelling house
   　　habitually used as a place of abode whether or not an occupant
   　　is physically present at the time of breaking and entering (CL
   　　1948, § 750.110, as amended by PA 1964, No 133).

2. BURGLARY—BREAKING AND ENTERING—UNOCCUPIED DWELLING.
   　Absence of complainant from his home for a weekend does not
   　　convert the home from an occupied to an unoccupied dwelling
   　　for purposes of the criminal statute punishing breaking and
   　　entering an occupied dwelling (CL 1948, § 750.110, as amended
   　　by PA 1964, No 133).

3. CRIMINAL LAW—QUESTIONS BY TRIAL JUDGE—PREJUDGMENT OF
   GUILT.
   　Questions by the trial judge of the prosecutor in a prosecution
   　　for breaking and entering as to whether the car defendant was
   　　driving was stolen, preliminary to ruling as to the admissibility
   　　of evidence concerning the contents of the car, is not sufficient
   　　to establish prejudgment of defendant's guilt or innocence
   　　(CL 1948, § 750.110, as amended by PA 1964, No 133).

Appeal from Wayne, Charles S. Farmer, J. Submitted Division 1 December 6, 1968, at Detroit. (Docket No. 4,522.) Decided February 27, 1969.

Roger Birts, Jr., was convicted of breaking and entering an occupied dwelling with intent to commit a larceny. Defendant appeals. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 13 Am Jur 2d, Burglary §§ 4, 27, 28.
　Vacancy or nonoccupancy of building as affecting its character
　　as a "dwelling" as regards burglary. 85 ALR 428.
[3] 53 Am Jur, Trial §§ 76, 79.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Joseph C. Murphy,* Assistant Prosecuting Attorney, for the people.

*Richard J. McClear,* for defendant on appeal.

BEFORE: Levin, P. J., and Holbrook and Rood,* JJ.

Per Curiam. Defendant, Roger Birts, Jr., and another were convicted in a nonjury trial of breaking and entering an occupied dwelling house with intent to commit larceny, contrary to MCLA § 750-.110 (Stat Ann 1968 Cum Supp § 28.305). The witnesses against the co-defendants were 8 police officers of the city of Highland Park, the complainant, Joseph J. Gabrick, and Gabrick's neighbor, Helen Lazar.

Gabrick testified that he and his wife left their home about 5 p.m. on Friday, August 5, 1966, and did not return until Sunday, August 7, in the afternoon. When he returned he found that the door from the garage to the hall had been jimmied, a TV had been moved, and closet doors and drawers, which were customarily left closed, were open. He had not given anyone permission to enter his home on August 5.

Mrs. Lazar testified that at about 10:20 p.m. on August 5, she heard a noise at her door and then someone rang the doorbell. She opened the door and found codefendant Brooks, who was trying the door. He asked if a doctor lived there and she said no. About 5 to 7 minutes after codefendant Brooks left Mrs. Lazar heard a noise at the patio. She

---

* Circuit Judge, sitting on the Court of Appeals by assignment.

turned on the lights and went into the utility room from which she saw through the window someone entering Gabrick's garage. She could not identify the person. She immediately called the police.

When the police arrived they found the molding around the door leading from the garage to the kitchen had been pried. They checked the house and found codefendant Brooks in the bathroom, wearing white gloves. He had a flashlight and there was a portable TV between his legs on the floor. The police found defendant Birts in the den and arrested him there. At the time of his arrest, Birts had in his possession a stainless steel butter knife.

Both defendants took the stand to testify and both explained their presence at the scene of the breaking and entering by stating that they had been trying to locate a doctor who lived in the neighborhood.

Defendant Birts has appealed his conviction and raises 3 issues for review: (1) Was the Gabrick home an "occupied dwelling" at the time of the breaking and entering? (2) Did the trier of fact indicate that he had formed an opinion of defendant's guilt during trial? (3) Was the evidence sufficient to support the finding of guilty beyond a reasonable doubt?

Defendant contends that since the Gabricks were away for the weekend, their house was an unoccupied dwelling as opposed to an occupied dwelling.

After the crime of which the defendant was convicted was committed the section of the Michigan penal code defining the crime was amended to provide that a dwelling house "habitually used as a place of abode" is an "occupied dwelling house" even though no occupant is physically present at the time of the breaking and entering. PA 1968, No 324. We regard this clarifying amendment as expositive of the correct construction of this section prior to the effectiveness of such amendment rather than as

changing the meaning of the section. The term "occupied" was used to convey the meaning attaching to that word in definitions of common-law burglary. At common law a breaking and entering of a structure habitually used as a dwelling house was burglary even though none of the occupants of the house were physically present at the time the offense was committed. 13 Am Jur 2d, Burglary, §§ 3, 4; 2 Wharton's Criminal Law and Procedure, §§ 423, 427. See, also, *Handy* v. *State* (1904), 46 Tex Crim 406 (80 SW 526).

The fact that the Gabricks were temporarily absent from their home at the time of the breaking and entering did not convert their home from an occupied to an unoccupied dwelling.

"We think it would not convey to an ordinary mind the idea that a house is vacant or unoccupied when it has an inhabitant who intends to remain in it as his residence, and who has left it for a temporary purpose. If the phrases were used in their strict legal sense, no one would imagine that the tenant was not such an occupant as would be liable to the responsibilities attached by law to occupants, or that there was such a vacancy of possession as would suspend possessory rights. It would be burglary to feloniously break and enter the house, and arson to maliciously burn it. There may be less occasion to care for a house in which no one lives than for one tenanted, but a person temporarily absent will usually take some pains to have his premises kept under oversight, and in the present case such provision was made for the domestic animals as well as for the house itself. It would we think be regarded as singular doctrine to hold that families leaving their houses on excursions or other temporary occasions cease to occupy them." *Stupetski* v. *Transatlantic Fire Insurance Co.* (1880), 43 Mich 373, 374, 375,

Defendant argues the trial court's question of the prosecutor, "It is not a stolen car is it?" indicates that the trial court concluded during the course of trial that defendant was guilty. The judge asked that question preliminary to ruling on the admissibility of evidence concerning the contents of the car. The fact that he anticipated the answer that would be made to his question, and correctly so, does not establish prejudgment of the defendant's guilt or innocence. *Cf. People* v. *Petrill* (1940), 292 Mich 139.

Finally, our review of the record discloses sufficient evidence present, if believed by the trier of fact, to support the finding of guilty beyond a reasonable doubt.

Affirmed.