PEOPLE v TRAYLOR

Docket No. 78-5303. Submitted June 17, 1980, at Detroit.—Decided
    September 16, 1980.

Oscar Traylor was convicted of breaking and entering an occu-
    pied dwelling with intent to commit larceny therein, Recorder's
    Court of Detroit, Thomas L. Poindexter, J. Defendant appeals,
    alleging that the trial court's instruction to the jury that its
    verdict must be unanimous was coercive and that the court
    erred in ruling that there was sufficient evidence to support a
    finding that the complainant's house was occupied on the date
    of the offense. *Held:*

    1. The trial court's instructions to the jury regarding the
    requirement of a unanimous verdict were, when considered in
    context, proper and were not coercive.

    2. The evidence showed that at the time of the offense the
    complainant's house had been rendered temporarily uninhabi-
    table by damage caused by a fire. However, temporary absence
    of an inhabitant does not transform a dwelling into an unoccu-
    pied one for purposes of the breaking and entering statute, and
    the complainant here moved back into the house shortly after
    the breaking and entering. Therefore, the dwelling was an
    occupied dwelling for purposes of the statute.

    Affirmed.

1. Criminal Law — Jury Verdict — Instructions to Jury.

    A verdict in a criminal case must be unanimous, and a trial
    court's instruction to a jury on the requirement for unanimity
    is not coercive.

2. Criminal Law — Evidence — Directed Verdict.

    Sufficient evidence must be presented on all elements of a crimi-
    nal offense to justify a rational trier of fact in finding guilt
    beyond a reasonable doubt before a trial judge may properly
    deny a motion for a directed verdict of acquittal.

References for Points in Headnotes
[1] 75 Am Jur 2d, Trial § 884.
[2] 75 Am Jur 2d, Trial § 553.
[3] 13 Am Jur 2d, Burglary § 4.

3. CRIMINAL LAW — BREAKING AND ENTERING — OCCUPIED DWELLING
   — STATUTES.

   A residence need not in fact be occupied in order for the offense
   of breaking and entering of an occupied dwelling to take place;
   any dwelling house habitually used as a place of abode,
   whether or not an occupant is physically present at the time of
   the breaking and entering, is an occupied dwelling within the
   meaning of the breaking and entering statute (MCL 750.110;
   MSA 28.305).

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Edward Reilly Wilson,* Prin-
cipal Attorney, Appeals, and *Frank J. Bernacki,*
Assistant Prosecuting Attorney, for the people.

*John C. Mouradian,* for defendant on appeal.

Before: N. J. KAUFMAN, P.J., and CYNAR and
J. E. TOWNSEND,* JJ.

PER CURIAM. Following a jury trial, defendant
was convicted of breaking and entering an occu-
pied dwelling with intent to commit larceny
therein, MCL 750.110; MSA 28.305, and subse-
quently was sentenced to probation for a term of
five years. Defendant appeals as of right.

The complainant testified that, in an unrelated
incident, someone had set fire to his house. Tempo-
rarily, he was living elsewhere, but was checking
the house daily. He and defendant knew one an-
other and lived on the same street. Four days after
the fire, defendant broke and entered complain-
ant's house. On that date the house was not livea-
ble due to the fire, water damage resulting from
the fire department's efforts to extinguish the fire,
and the fact that the water pipes had burst. Com-
plainant further testified that he had intended to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

return to his home and not to abandon it, and did in fact return one week after the B & E.

Another witness, Alvin Cobb, testified that he saw defendant and another man on the porch of complainant's house on the day of the crime. Shortly thereafter, he notified the police.

Officer Simpson testified that, when arriving at the house, he saw defendant in the backyard of the house holding what appeared to be a portable radio. When the man attempted to flee, Officer Simpson fired his weapon. Officer Simpson testified that he saw a lamp, a vacuum cleaner, and several other objects in the backyard at that time. A flashlight was found on Mark Dunne, arrested with defendant.

As a result of the shooting, defendant was paralyzed. Defendant contended throughout the trial that he and Mark Dunne had entered the house because they saw two other men enter it. Furthermore, throughout the trial defendant contended that the criminal case was a coverup to insulate the police or the city from civil liability.

Defendant raises a number of issues, only two of which merit discussion.

Defendant initially claims that the trial court's instruction on unanimous verdicts was coercive, as it foreclosed the jury from being deadlocked. We disagree. The substance of the instruction was that a verdict in a criminal case must be unanimous. This is a correct statement of the law. See *People v Burden,* 395 Mich 462, 468-469; 236 NW2d 505 (1975), GCR 1963, 512.1.

Moreover, the instruction must be viewed in the context in which it was given. The jury had already been excused and had begun deliberations when it sent a note to the court, the precise substance of which is not disclosed in the record.

The court had already instructed the jury regarding the principal charge in count I of the information, *viz.,* breaking and entering an occupied dwelling with intent to commit larceny therein, as well as instructing the jury on the lesser-included offense of B & E of an unoccupied dwelling, upon the prosecutor's request therefor. The court had also instructed on the charge contained in count II, larceny in a building. In instructing the jury following receipt of the note the court at no time said that the jury must find defendant guilty or not guilty only of the principal charge of B & E of an occupied dwelling or only of the other offenses for which instructions were given. Finally, at all times during deliberations the jury had in its possession a verdict form, enumerating all offenses upon which they were instructed, which form contained appropriate spaces where the jury could enter a verdict of guilty or not guilty on each such offense. Viewing the disputed instruction with reference to the earlier instructions on the charged offenses and one lesser-included offense, and with reference to the verdict form which apprised the jury of the verdict options available to it, we conclude that the court's later instruction on unanimous verdicts necessarily was intended to inform the jury that they could find defendant guilty or not guilty of any of the three instructed-upon offenses, as the evidence and their consciences dictated. As such, we do not find it coercive or otherwise infirm. See *People v Henry,* 395 Mich 367, 370-374; 236 NW2d 489 (1975).

Defendant also urges us to find reversible error in the court's ruling that there was sufficient record evidence to support a finding beyond a reasonable doubt that the complainant's house was occupied on the date of the offense. The court's

ruling to this effect came after defense counsel moved for a directed verdict of acquittal following presentation of the people's case against defendant. Under *People v Hampton,* 407 Mich 354, 366-368; 285 NW2d 284 (1979), there must be sufficient evidence presented on all elements of a criminal offense to justify a rational trier of fact in finding guilt beyond a reasonable doubt before a trial judge may properly deny a motion for a directed verdict.

Under Michigan law, a residence need not in fact be occupied when the offense takes place in order for the offense to constitute a breaking and entering of an occupied dwelling. *People v Guerrero,* 57 Mich App 316, 319; 225 NW2d 746 (1975). Any dwelling house habitually used as a place of abode, whether or not an occupant is physically present at the time of the breaking and entering, is an occupied dwelling within the meaning of the statute under which defendant was convicted. When an inhabitant intends to remain in a dwelling as his residence, and has left it for a temporary purpose, such absence does not change the dwelling into an unoccupied one in the eyes of the law. The intent to return following an absence controls; the duration of the absence is not material. Nor is the structure's habitability germane. *People v Martin,* 26 Mich App 359; 182 NW2d 625 (1970), *People v Collins,* 20 Mich App 571; 174 NW2d 285 (1969), *People v Larson,* 20 Mich App 301; 174 NW2d 82 (1969), *People v Birts,* 16 Mich App 237; 167 NW2d 829 (1969).

In this case, we have the complainant's uncontroverted testimony that his absence from his home was a temporary one due to fire and attendant water damage, and because the water pipes had burst. We have his statement that he intended

to return to his residence and did not intend to abandon it, and that he, in fact, returned but one week after the B & E. We find this evidence sufficient to satisfy us beyond a reasonable doubt that the dwelling was occupied, as that term is used in MCL 750.110; MSA 28.305. Accordingly, the trial judge's refusal to grant defendant's motion for a directed verdict was proper.

We find no error requiring remand or reversal and, therefore, affirm.

Affirmed.