NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0200n.06
Filed: April 16, 2008

No. 07-5642

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MONA L. GANT, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| GENCO I, INC., dba Genco Distribution, | ) | **O P I N I O N** |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE:    MOORE and McKEAGUE, Circuit Judges; SCHWARZER, District Judge.[*]

**McKEAGUE, Circuit Judge.** Defendant Genco I, Inc. ("Genco") employed plaintiff Mona

Gant until her discharge in June 2004. After her discharge, Gant sued Genco, alleging employment

discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, and

a supplemental state claim pursuant to the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-

101 *et seq.* The district court adopted the findings in the magistrate judge's Report and

Recommendation, determining that Gant failed to create a genuine issue of material fact as to both

claims, and therefore granted summary judgment for Genco. Upon review of the applicable law and

record, we AFFIRM judgment in favor of Genco.

### FACTUAL AND PROCEDURAL BACKGROUND

---

[*]The Honorable William W. Schwarzer, Senior United States District Judge for the Northern
District of California, sitting by designation.

Gant began her employment as an at-will employee with Genco in 2001 at its Hewlett Packard facility in Lavergne, Tennessee. In August 2003, Genco promoted Gant to a Quality Assurance ("QA") Team Lead. As a QA Team Lead, Gant supervised and managed several hourly employees, including one Osman Said. Gant continued to work as a QA Team Lead until Genco terminated her employment.

On May 19, 2004, Said approached Gant's supervisor, Rob Duenas, to discuss difficulties he was having with Gant. Specifically, Said complained that Gant spoke to him in an offensive manner by calling him such names as "jackass," "dumb ass," and "lazy," frequently demeaning him in the presence of other co-workers, and assigning him difficult tasks. J.A. 144, 147. On that same day, in response to receiving this complaint, Gant's manager, Jim Pruitt, interviewed several QA Teammates. Two days later, on May 21, Duenas also interviewed several QA Teammates who interacted with Gant on a regular basis. During this time, Pruitt notified Gant that Genco had received a complaint, and that Gant would be reassigned within the facility pending the outcome of the investigation into the complaint. Ultimately, Genco's investigation, which was conducted by Duenas, Pruitt, Tony Newman (the Genco facility manager) and Ophelia Scott (the Regional Teammate Services Manager), determined that Gant had exhibited "belligerent behavior and disrespect for Teammates, Management, and Genco policies." J.A. 127. Effective June 7, 2004, Genco terminated Gant.

Gant utilized Genco's internal grievance policy, and on June 15, 2004, requested reinstatement. In her grievance, Gant alleged that her termination was due to "a double standard and discrimination of color." J.A. 133. According to Gant, she was the only employee ever to be

investigated, and she denied calling Said a "jackass."[1] J.A. 99. She likewise denied being verbally

abusive or disrespectful to any employees. Ultimately, the Vice President of Teammate Relations,

Robert Meintus, made the decision to offer Gant reinstatement, but in a different department and at

a loss of $1.25/hour in hourly wage, contingent upon Gant's private apology to Said. Gant refused

reinstatement on these terms, and she instead requested an appeal to the Business Unit President,

Buzzy Wyland. Wyland approved Genco's action with respect to Gant and finalized her termination.

In this action, Gant alleges that Genco's decision to terminate her was the product of race

discrimination in violation of her civil rights under both federal law (Title VII, 42 U.S.C. § 2000e

*et seq*.) and state law (Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq*.). On

November 28, 2005, the district court referred this case to a magistrate judge pursuant to 28 U.S.C.

§ 636(b)(1)(B) for a Report and Recommendation on all dispositive motions. On March 29, 2007,

the magistrate judge's Report and Recommendation concluded that Genco's motion for summary

judgment should be granted. J.A. 26-37. On April 16, 2007, noting that no objections to the

magistrate judge's Report and Recommendation were filed, the district court awarded summary

judgment to Genco. This appeal followed.

---

[1] In his deposition testimony, Newman recalled an interview with Gant shortly after the incident, in which Gant admitted to calling Said a 'jackass' but denied other accusations of wrongdoing. *See* J.A. 145.

**ANALYSIS**

**A. Waiver of Appeal**

As a threshold matter, we must determine whether Gant has waived the right to appeal from the judgment of the district court for failure to timely file written objections to the magistrate judge's Report and Recommendation. In *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981), we established this circuit's rule that a party's failure to object to a magistrate judge's report, within the time provided for filing objections, operates as a waiver of that party's right to appeal. *See also Thomas v. Arn*, 474 U.S. 140, 142 (1985) (affirming the constitutionality of *Walters*' waiver rule).

Here, Gant's failure to timely object to any matters addressed in the magistrate judge's Report and Recommendation constitutes a waiver of her appeal. Gant's causes of action were referred to a magistrate under 28 U.S.C. § 636(b)(1)(B). The Report and Recommendation, filed March 29, 2007, stated the following:

> Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.

J.A. 37. However, Gant did not file any objections. The district court, after reviewing the magistrate judge's Report and Recommendation and noting that no objections had been filed, adopted the report eighteen days later by order filed April 16, 2007:

> Pending before the Court is a Report and Recommendation of the Magistrate Judge [], to which no Objections have been filed. The Court has reviewed the Report and Recommendation and the file. The Report and Recommendation is adopted and approved.

J.A. 38. Thus, barring any exceptions to *Walters'* waiver rule, Gant's failure to object to the magistrate judge's Report and Recommendation operates as a waiver of her right to appeal from the district court's grant of summary judgment.

Our waiver rule from *Walters* is not absolute, however, *see United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005), and we note that it is one of judicial procedure and not of jurisdiction. *See Kent v. Johnson*, 821 F.2d 1220, 1222-23 (6th Cir. 1987). We have found that a plaintiff's failure to object to a magistrate judge's Report and Recommendation may be treated as though it has not been waived where (1) the defendant has not argued waiver in its appellate brief; (2) the plaintiff made a "colorable attempt at an objection;" and (3) the district court does not itself "treat[] the claim as waived." *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 715 (6th Cir. 2001); *see also Cottenham v. Jamrog*, 248 F. App'x 625, 632 (6th Cir. 2007) (same).

Here, the district court noted that no objections were filed to the magistrate judge's Report and Recommendation, and while it also reviewed the merits of the Report and Recommendation, this fact is of no consequence under our treatment of the *Walters'* waiver rule here. In *Vaughn*, this court entertained an appeal brought by a plaintiff who failed to make a timely objection to a magistrate judge's Report and Recommendation, where "neither the district court, nor defendant until the day of oral argument, treated the claim as waived, and because there was a colorable attempt at an objection." 269 F.3d at 715. The present case is distinguishable from *Vaughn*, however, as Genco's principal argument in the present appeal is in fact Gant's failure to timely object to the magistrate judge's Report and Recommendation. Moreover, unlike the plaintiff in *Vaughn*, Gant made no attempt at an objection to the magistrate's Report and Recommendation, colorable or otherwise.

Thus, under the present circumstances, our waiver rule from *Walters* renders Gant's appeal defective and *Vaughn's* exception does not apply. *See also Thomas*, 474 U.S. at 154 (upholding our determination that the plaintiff's arguments were waived despite the district court's review of the merits of the magistrate judge's Report and Recommendation).

We also have excused default under the *Walters'* waiver rule in circumstances where an objection was filed by leave of the district court beyond the ten days within which to file written objections. *See Patterson v. Mintzes*, 717 F.2d 284, 286 (6th Cir. 1983). We noted in *Patterson* that "when written objections to a magistrate's report are tendered beyond the 10 day period . . . , but are nevertheless filed and considered by the district court, the criteria identified in *Walters* in justification of the waiver rule promulgated therein dissipate and the rule will not apply to bar appellate review." *Id.* In *Patterson*, the plaintiff filed a written objection on the 12th day following receipt of the magistrate judge's Report and Recommendation, and the district court considered the objections despite their being untimely. *Id.* The instant case is readily distinguished from *Patterson*, however, as Gant never filed an objection, and the district court necessarily did not lend consideration to the objections now brought on appeal. Thus, the exception to the *Walters'* waiver rule carved out in *Patterson* also is inapplicable here.

Lastly, we have excused default under the waiver rule "where the district court's error is so egregious that failure to permit appellate review would work a miscarriage of justice." *United States v. Real Property Located at 1184 Drycreek Road, Granville, Ohio 43023*, 174 F.3d 720, 726 (6th Cir. 1999). However, even if we were to confront the merits of Gant's appeal, see discussion *infra*,

we would conclude that the district court did not err in granting Genco's motion for summary judgment and therefore the miscarriage of justice exception also cannot save the appeal.

## B. Merits of Appeal

"On appeal, the circuit court reviews a grant of summary judgment de novo, using the same Rule 56(c) standard as the district court." *Vaughn*, 269 F.3d at 710. "Initially, the moving party has the burden of proving that no genuine issue as to any material fact exists and that it is entitled to judgment as a matter of law." *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). When we review a district court's decision to grant summary judgment, we view all evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.*

### *Gant Fails to Establish a Prima Facie Case of Discrimination*

To establish a *prima facie* claim of racial discrimination under both Title VII of the Civil Rights Act of 1964 and the Tennessee Human Rights Act, a plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by a person outside of the protected class. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). Additionally, where a plaintiff has not been replaced by a person outside the protected class, we permit a Title VII plaintiff to satisfy this

fourth requirement by showing "a comparable non-protected person was treated better."[2] *Id.* at 582-83.

Here, the magistrate judge determined that Gant did not carry her burden of establishing a *prima facie* case of discrimination. J.A. 32. Specifically, the magistrate judge determined that Gant failed to offer evidence of a comparable non-protected person who was treated better in similar circumstances. J.A. 36 ("Ms. Gant has failed to prove that a comparable non-protected person was treated better, the fourth element of a *prima facie* case.").

Gant challenges this conclusion, pointing out that the favorable treatment of similarly-situated Caucasian employees would raise an issue of material fact as to the fourth element of a *prima facie* case of discrimination. In support of her argument, Gant claims that two Caucasian employees - Brian Sanders and Sandra Corum - were not subject to termination for verbal misconduct at work, but were allowed to return to Genco with only a write-up, and without any additional investigation. Specifically, Gant testified that she observed Sanders make a derogatory remark towards a fellow employee, but that he was allowed to return to work subject to a write-up. J.A. 101 ("[Sanders] called this girl a crackhead. And she was crying on the line. She was crying. And the next day, I'm thinking they wrote him up, because he told me they wrote him up."). Gant also testified that on one occasion she observed Corum being disrespectful to a supervisor, "call[ing] her something" and "walk[ing] off the job." J.A. 101. As a result, Corum was moved to a different

---

[2] The magistrate judge correctly noted that a plaintiff can establish her *prima facie* case by presenting credible, direct evidence of discriminatory intent. However, Gant fails to offer such direct evidence, and therefore the magistrate judge properly proceeded with the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

position under a different supervisor, but was allowed to return to work "the next day." J.A. 102. According to Gant, neither Sanders nor Corum were subject to a work-place investigation on the basis of misconduct allegations.

To be similarly situated, however, a comparator must "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it." *Mitchell*, 964 F.2d at 583. "[T]he plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the relevant aspects.'" *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)). Moreover, a district court "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Id.*

In view of *Mitchell* and *Ercegovich*, the magistrate judge properly noted that Gant failed to raise a genuine issue of material fact as to whether Sanders and Corum engaged in the "same conduct" that ultimately led to Gant's termination. Stated differently, the district court correctly determined that the allegation of an *ongoing* pattern of misconduct, as opposed to a single accusation of wrongdoing, was a distinguishing, relevant factor in Genco's treatment of Gant as compared to Sanders and Corum. In support of this conclusion, it is undisputed that Genco investigated and terminated Gant on the basis of multiple complaints and corroborating statements submitted by her subordinates and coworkers. For example, Anthony Newman, the facility manager for Genco who supervised the investigation that ultimately led to Gant's termination, indicated that the "seven or eight people who reported to [Gant]" complained that Gant was "abusive toward several of the

teammates" and "abrupt with the teammates." J.A. 144. In one incident, Gant was reported to have kicked over a trash can when Said did not completely empty a trash can. *See* J.A. 144. ("[Teammates] reported that [Gant] had gotten after [Said] because he was told to clean out a waste paper basket, didn't do a good enough job to suit her because there was a piece of gum and paper stuck to the bottom so she walked up and kicked that can and told him to clean the gum and paper out."). Additionally, Katherine Miguel, a second shift reversal clerk, indicated that "[Gant] has been very rude and hateful to most of the QA teammates a lot of the time." J.A. 50. Miguel noted in her written statement that "[e]ither [Gant] sits at her desk or at Rob's desk on the phone or she can't be found most of the time," and "[Gant] talks about the teammates like they are trash. She calls them stupid and lazy. When she has to repeat herself she get's angry." J.A. 50. In his written statement, Said indicated that Gant frequently demeaned him in the presence of other co-workers and assigned him difficult tasks. *See* J.A 48 ("She calls me names (Jackass, dumb ass, etc...), yells at me, gets up in my face, says I am lazy."). Lastly, Newman explained that Genco terminated Gant for a series of alleged wrongdoings:

> Q: So was the main reason that Ms. Gant got terminated was the fact that she referred to this employee as a jackass?
> [Newman]: No.
> Q: So the other reasons, as I understand, are because of putting too much work on an employee and doing stuff like kicking the trash can and – and let me know if I'm leaving anything out.
> [Newman]: I think it was several different reasons.
> Q: Okay. And what's your understanding of those?
> [Newman]: The name-calling, calling him a jackass, the unfair work assignment, being hostile toward [Said].

J.A. 144-45.

The cumulative effect of the reported incidents indicate that Gant was terminated on the basis of allegations of ongoing and pervasive misconduct in violation of Genco's General Rules of Conduct and Harassment Policy. By contrast, Gant fails to offer evidence of similar ongoing and pervasive misconduct by either Sanders or Corum. Rather, Gant's evidence merely demonstrates lesser punishment for a lesser offense. Accordingly, Gant fails to offer evidence that creates a genuine issue of material fact that non-protected employees similar in all "relevant respects" were treated better than Gant, and therefore the district court properly granted summary judgment in favor of Genco.

### *Gant Fails to Demonstrate Pretext*

Even when a plaintiff creates a presumption of discrimination by establishing a *prima facie* case, a defendant may rebut this presumption by offering a legitimate, nondiscriminatory reason for its decision. *Mitchell*, 964 F.2d at 584. Once a defendant meets this burden of production, the plaintiff bears the burden of showing that the reasons offered by the defendant were in fact a pretext for discrimination. *Id.* The ultimate burden of proof to demonstrate discrimination remains on the plaintiff at all times. *Kent County Sheriff's Ass'n v. County of Kent*, 826 F.2d 1485, 1492 (6th Cir. 1987).

Here, the district court found that "Gant has failed to carry her burden of proving that the company's reason offered is a pretext for intentional discrimination." J.A. 26. Genco explains that it terminated Gant because its investigation revealed a pattern of "belligerent behavior and disrespect for Teammates, Management, and Genco policies." J.A. 127. While Gant disputes Genco's explanation, Gant fails to come forward with evidence showing that the explanation is not true or

that racial animus was the true motivation for Gant's discharge. Gant's simple "denial of the defendant's articulated legitimate reason without producing substantiation for the denial is insufficient for a race discrimination claim to withstand a motion for summary judgment." *Mitchell*, 964 F.2d at 585. Accordingly, having failed to adduce any evidence on which a reasonable trier of fact could conclude that Genco's explanation is false, there is no plausible evidentiary basis for an inference that racial animus was the true motivation for Gant's termination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Thus, the magistrate judge correctly determined that Gant failed to create a genuine issue of material fact as to pretext.

Gant challenges this result, contending that the magistrate judge made an improper credibility determination by accepting the results of Genco's investigation as true. This argument, however, ignores our teaching in *Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998), where we adopted an "honest belief" rule with regard to an employer's proffered reason for discharging an employee. *See also Clay v. United Parcel Services, Inc.*, 501 F.3d 695, 714 (6th Cir. 2007). "Under this rule, as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001). Thus, it is immaterial that the results of Genco's investigation might ultimately be shown to be mistaken.

Rather, in the context of a race discrimination claim, "the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith*, 115 F.3d at 807. In other words, what Gant may do - and what she has not done -

is to challenge the investigation as the actual reason for her discharge by bringing forth evidence that the defendant did not "'honestly believe' in the given reason for [p]laintiff's termination." *Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 502 (6th Cir. 2007); *Clay*, 501 F.3d at 714 ("The burden of production is on the plaintiff to demonstrate that the reason given by the employer is 'mistaken, foolish, trivial, or baseless.'").

Applying *Smith* to the present case, the record suggests that Genco reasonably informed itself of the situation surrounding the accusations made against Gant, and it further suggests that Genco held an honest belief that Gant had violated company policy. In particular, Genco documented Gant's need for improvement over a period of years, and the investigation, while prompted by a complaint from Said, did not rest on his credibility alone. Rather, the investigation into accusations made against Gant included corroborating statements from multiple co-workers, and the investigation was conducted by no less than Gant's manager, Pruitt, her direct supervisor, Duenas, and the Genco facility manager, Newman, and occurred over a period of several weeks. While Gant disputes and denies the claims and accusations in the statements of her fellow employees to Genco, she does not dispute that those statements were in fact given. Neither does Gant dispute that *if true*, "belligerent behavior and disrespect" constitutes a legitimate basis for termination of an at-will employee. Accordingly, Gant fails to meet her burden of bringing forth evidence that raises a genuine issue of material fact that Genco did not honestly believe in the given reason for Gant's termination.

Indeed, even if we were to confront the merits of the appeal, we would find that Gant fails to create a genuine issue of material fact as to the fourth element of a *prima facie* case of

discrimination, and Gant similarly fails to create a genuine issue of material fact as to pretext.

Accordingly, the district court did not err in granting summary judgment in favor of Genco.

## CONCLUSION

After evaluating the evidence in the record, the applicable legal standards, and the arguments raised by both parties, we find that Gant has waived her right to appeal by failing to object to the magistrate judge's Report and Recommendation. Even if we were to reach the merits of the appeal, Gant fails to raise a genuine issue of material fact, and we would affirm the district court award of summary judgment in favor of Genco in any event. For all of these reasons, we **AFFIRM** judgment in favor of Genco.

      **KAREN NELSON MOORE, Circuit Judge, concurring in the judgment.** Under the circumstances of this case, and in light of our established precedent discussed by the majority in Part A, I believe that Mona Gant waived her right to appeal by failing to file any objections to the magistrate judge's Report and Recommendation. Therefore, I would dismiss the appeal on that basis alone.