**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 13a1031n.06**

**No. 12-1387**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 17, 2013
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| KELLY POWELL, | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
| Petitioner-Appellant, | ) | COURT FOR THE EASTERN |
|  | ) | DISTRICT OF MICHIGAN |
| v. | ) |  |
|  | ) | O P I N I O N |
| MARY BERGHUIS, Warden, | ) |  |
|  | ) |  |
| Respondent-Appellee. | ) |  |

BEFORE:     COLE and CLAY, Circuit Judges; and BERTELSMAN, District Judge.[*]

COLE, Circuit Judge.  Petitioner-Appellant Kelly Powell appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254.  In 2006, Powell was convicted in Michigan state court for second-degree home invasion.  In this appeal, he contends that the federal district court erred in denying the following claims: (1) a due process claim; (2) an ineffective assistance of trial counsel claim; (3) an ineffective assistance of appellate counsel claim; and (4) a cruel and unusual punishment claim that resulted from his lengthy prison sentence.  Because Powell has waived or defaulted on several of his claims, and because of the highly deferential standards imposed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") with respect to those claims preserved on appeal, we affirm the district court's denial of the writ.

---

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

## I. BACKGROUND

### A. Factual Background

Powell was arrested on December 22, 2005, after Pontiac police officers responded to a reported breaking and entering in progress at a temporarily condemned residence. When the police arrived, they heard a sound coming from the home "as if a metal pipe was falling on concrete." The officers noticed a pile of copper pipe sitting by the front porch, untouched by a recent snowfall. Accordingly, they entered the home to search for vandals. Inside, the police noticed more copper pipe, a water meter, and some water valves in a pile at the top of the basement stairs. In the basement, they observed water leaking from the remnants of a pipe dangling from the ceiling. After a thorough search, the police eventually discovered Powell hiding inside a large chest freezer in a corner of the basement. The officers placed Powell under arrest, at which point he stated that he saw the condemned sign on the house and that he "was removing the scrap." The police had not read Powell his *Miranda* rights prior to this admission. He was subsequently charged with second-degree home invasion under Michigan law, and he received appointed counsel for trial.

### B. Procedural History

A Michigan trial court conducted a preliminary investigation in June 2006, at which one of the arresting officers, Bryan Wood, testified. When the prosecutor asked Officer Wood what happened immediately after he placed Powell under arrest, the officer stated, "We asked him if—," at which point Powell's trial counsel objected on *Miranda* grounds. The court asked the prosecutor to clarify the direction of his questioning. The prosecutor then returned to questioning Officer Wood:

Q: Let's not talk about anything that the Defendant said to you in response to a question. But do you recall if the Defendant said anything on his own?

A: He made an unsolicited statement.

Q: Okay. And what statement did he make that was unsolicited?

A: That he saw the condemned sign on the house and he was removing the scrap.

. . .

Q: And you said this was unsolicited?

A: Yes.

. . .

Q: And at that time, was the Defendant under arrest?

A: Yes.

Q: Did you ask him any questions relating to that—leading up to that point?

A: No.

The trial court made no ruling on the initial *Miranda* objection, and Powell's counsel did not pursue the matter further or file a motion to suppress the statement. At the conclusion of the parties' arguments, the court found probable cause and bound the matter over for trial.

Trial began in November 2006. The prosecution brought a primary charge of home invasion and alternate lesser charges of breaking and entering a building with intent and entering without the owner's permission. The owner of the home testified that he purchased it in early 2005, that an electrical fire caused damage to the upstairs portion of the home in December 2005, and that he and his family temporarily moved out while the insurance company arranged repairs. The homeowner

explained that it was his intent all along to move back in once the home was repaired, and that he and his family in fact moved back in during May of 2006. In the interim, the City of Pontiac temporarily condemned the home due to fire damage. Thus, Powell was arrested in the home while it was condemned and the homeowner was temporarily living elsewhere.

At trial, Officer Wood again testified that Powell voluntarily stated that he had seen the "condemned sign" on the front door and then decided to remove the scrap metal from the home. Powell's counsel did not object to this line of questioning or pursue the circumstances surrounding Powell's admission on cross-examination. Powell did not testify, and defense counsel called no witnesses. Instead, defense counsel moved for a directed verdict, which the court denied.

During closing arguments, the prosecutor focused on the difference between a "dwelling" and a structure that is "just a building" in differentiating between the elements of home invasion and the lesser charge of breaking and entering. The prosecutor argued that the homeowner's intent to return controlled the dwelling analysis and could render a temporarily unoccupied structure a "dwelling" nonetheless: "[O]ur house is our castle, is the phrase that comes to mind, ladies and gentleman . . . ." The prosecutor also argued that Powell's admission to Officer Wood satisfied the element of intent to commit larceny, a factual predicate necessary for a home-invasion violation.

Powell's counsel countered that the prosecution had proven only entry without permission—not home invasion. Counsel focused on the meaning of the word "dwelling" and the homeowner's intent to return, arguing, "Look, this house, nobody was coming back to this house in the condition that it was. . . . [I]t wasn't sure whether that house was going to be torn down or rebuilt or repaired."

The court then instructed the jury as to the dwelling element of the home invasion charge:

> When an inhabitant intends to remain in a dwelling as his residence and has left it for a temporary purpose, such absence does not change the dwelling into an unoccupied one in the eyes of the law. Intent to return following an absence controls and duration of absence is not material, nor is it [sic] structure's habitability germane.

The court also instructed the jury on the alternate lesser offenses. Powell's counsel did not object to any of the jury instructions, and the jury returned a guilty verdict on the home invasion charge. Powell's attorney stated that Powell would admit to a habitual fourth offender status "right now." At a subsequent sentencing hearing, the court recounted Powell's lengthy criminal history before sentencing him to ten to twenty years' imprisonment, consecutive to his parole, pursuant to Michigan statute for habitual offenders. Mich. Comp. Laws § 769.12.

Following his conviction and sentencing, Powell filed an appeal as of right to the Michigan Court of Appeals, where he was represented by newly appointed counsel. Powell's appellate counsel argued (1) that the trial court should have granted Powell's motion for a directed verdict; (2) that the evidence supporting his conviction was insufficient; and (3) that his sentence was cruel and unusual under the Michigan and United States Constitutions. Powell raised a fourth claim—ineffective assistance of trial counsel—on his own behalf in a supplemental pleading. Powell's appellate counsel refused to raise that claim because he did not believe it was meritorious. The Michigan Court of Appeals rejected Powell's claims and affirmed his conviction and sentence. *People v. Powell*, 750 N.W.2d 607 (Mich. Ct. App. 2008) (per curiam). The Michigan Supreme Court subsequently denied his discretionary appeal. *People v. Powell*, 754 N.W.2d 893 (Mich. 2008).

Powell filed his initial habeas petition in the United States District Court for the Eastern District of Michigan on October 29, 2009, with a request to stay the proceedings pending exhaustion of his state court remedies. The district court granted Powell's motion, but his pro se attempts at state post-conviction relief were unsuccessful. The state trial court denied his post-conviction petition, and the Michigan Court of Appeals and Supreme Court denied leave to appeal. After exhausting his state post-conviction remedies, Powell returned to federal court and filed an amended habeas petition on May 3, 2011.

In his amended petition, Powell raised the following claims: (1) it was error for the trial court to deny Powell's motion for a directed verdict because the home in question did not constitute a dwelling; (2) there was insufficient evidence as to Powell's intent to commit larceny—an essential element of second-degree home invasion; (3) Powell's ten to twenty year prison sentence constituted cruel and unusual punishment under the Eighth Amendment of the United States Constitution; (4) ineffective assistance of appellate counsel; (5) ineffective assistance of trial counsel where counsel failed to challenge the admissibility of Powell's post-arrest admission; (6) prosecutorial abuse stemming from the use of Powell's post-arrest admission; and (7) cumulative error.

A magistrate judge issued a Report and Recommendation advising the district court to deny the petition as to all claims and to deny a certificate of appealability ("COA"). Powell objected to some portions of the Report and Recommendation but left unchallenged the magistrate's recommendations as to others. The district court accepted the recommendation to deny relief on all claims but granted a limited COA on Powell's Eighth Amendment claim.

## C. The Instant Appeal

Powell then filed a notice of appeal on April 2, 2012, which this court construed as a motion to expand the COA. We granted that motion as to all issues raised in Powell's original and amended habeas petitions and ordered that counsel be appointed. On appeal, Powell contends that the district court erred in denying the writ based on the following claims: (1) a due process claim stemming from an allegedly improper jury instruction and/or insufficiency of the evidence regarding the elements of Michigan's home invasion statute; (2) an ineffective assistance of trial counsel claim stemming from his attorney's failure to object to the improper jury instruction and failure to investigate or challenge the admission of Powell's post-arrest admission; (3) an ineffective assistance of appellate counsel claim for the failure to raise trial counsel's shortcomings; and (4) a cruel and unusual punishment claim that resulted from his ten to twenty year prison sentence.

## II. STANDARD OF REVIEW

Because Powell filed his habeas petition in 2009, well after AEDPA became effective, AEDPA governs our review. *Carter v. Mitchell*, 443 F.3d 517, 524 (6th Cir. 2006). AEDPA requires us to deny habeas relief with respect to any federal claim that was "adjudicated on the merits in State court proceedings" unless the state court's decision was "contrary to" or involved an "unreasonable application of" clearly established federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d). This heightened standard presumptively applies even if the state court hearing the petitioner's federal claim "issues an opinion that . . . does not expressly address the federal claim in question." *Johnson v. Williams*, 133 S. Ct. 1088, 1091 (2013). When this situation occurs, "the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the

merits." *Id.* This presumption applies, for example, when state precedent "is viewed as fully incorporating a related federal constitutional right" or is "generally coextensive with" its federal counterpart. *Id.* at 1094–95 (citation and internal quotation marks omitted).

These are precisely the circumstances in which the Michigan courts adjudicated Powell's federal claims on direct appeal and collateral challenge. As such, we presume the state courts adjudicated Powell's federal claims on the merits, and Powell has done nothing to rebut that presumption. Accordingly, we review each of his claims on appeal under the "restrictive standard of review" set out in AEDPA, *Williams*, 133 S. Ct. at 1092, and we will disrupt the state courts' determinations only if they were "contrary to" or involved an "unreasonable application of" clearly established federal law. 28 U.S.C. § 2254(d).

A decision is "contrary to" clearly established federal law "if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). An "unreasonable application" occurs when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). Rather, habeas relief is warranted only when a petitioner shows that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87.

## III.  ANALYSIS

As a threshold matter, Powell has waived the right to appeal the denial of his cruel and unusual punishment claim due to his failure to file a written objection to that portion of the magistrate judge's Report and Recommendation. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987) (holding, under our supervisory powers, that a party's failure to file specific objections to a magistrate's report to the district court operates as a waiver of those issues on appeal).

We recognize that our waiver rule is not absolute. *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 714–15 (6th Cir. 2001) (holding that a plaintiff's failure to object to a magistrate's report may be treated as though it has not been waived where (1) the defendant has not argued waiver in its appellate brief; (2) the plaintiff made a "colorable attempt at an objection"; and (3) the district court did not itself "treat[] the claim as waived").  But the exception described in *Vaughn* does not apply in this case.  Unlike in *Vaughn*, where the defendant did not raise the waiver issue until the day of oral argument, the State of Michigan has placed waiver prominently in its appellate brief. Moreover, unlike in *Vaughn*, Powell made no attempt—colorable or otherwise—to object to the magistrate's report as to this claim.  Although the district court reviewed the merits of the magistrate's report on this point, thus showing that the district court did not itself treat the claim as waived, this fact alone does not preserve the issue on appeal.  *See Thomas v. Arn*, 474 U.S. 140, 144–45 (upholding our conclusion that arguments had been waived, despite the district court's review on the merits); *Gant v. Genco I, Inc.*, 274 F. App'x 429, 432 (6th Cir. 2008).  Accordingly, Powell has waived his Eighth Amendment claim on appeal.

## A. Jury Instruction and Sufficiency of the Evidence

In his first assignment of error, Powell alleges that the trial court misstated established state law in its jury instruction defining the element of a "dwelling" in the Michigan home invasion statute. Consequently, he argues that the trial court impermissibly eased the prosecution's burden of persuasion. Powell couches this argument as a sufficiency of the evidence claim under the Due Process Clause. Powell has defaulted on the former allegation, and he loses on the merits on the latter.

To the extent Powell asserts for the first time on appeal that the trial court's jury instruction was erroneous, he has procedurally defaulted on that claim. *Landrum v. Mitchell*, 625 F.3d 905, 918 (6th Cir. 2010) ("When the petitioner has failed to present the grounds to the state courts and has exhausted his claims because no state remedy remains available, his grounds are procedurally defaulted."). Further, because AEDPA applies, we may address only the issues which are specified in the COA. 28 U.S.C. § 2253(c)(3); *Searcy v. Carter*, 246 F.3d 515, 518 (6th Cir. 2001). Although we granted Powell an expanded COA, we did so only for the claims raised in Powell's original and amended habeas corpus petitions, not extraneous claims. Powell did not obtain a COA on the specific claim of an erroneous jury instruction. Accordingly, we decline to review this claim.

We may, however, address Powell's argument that his conviction was not supported by sufficient evidence. In reviewing this claim, we must afford two levels of deference: one to account for the jury's verdict and another, under AEDPA, to account for the state court's consideration of that verdict. *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012). With regard to the first level of deference, "the relevant question is whether, after reviewing all of the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. With regard to the second level of deference, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Johnson*, 132 S. Ct. at 2062 (citation omitted). We therefore ask only whether the state court's application of *Jackson*'s already deferential standard was objectively unreasonable.

Turning to the merits of Powell's argument, the Due Process Clause guarantees that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson*, 443 U.S. at 316. The standard for a constitutional sufficiency of the evidence claim "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. Therefore, even though Powell defaulted on his erroneous jury instruction claim, we must still look to state law to determine the elements of the home invasion crime for which he was convicted.

The elements of second-degree home invasion are that the defendant "(1) entered a dwelling, either by breaking and entering or entering without permission, (2) with the intent to commit a felony or a larceny in the dwelling." *People v. Nutt*, 677 N.W.2d 1, 16 (Mich. 2004) (citing Mich. Comp. Laws § 750.110a(3)). The statute further defines a "dwelling" as "a structure or shelter that is used permanently or temporarily as a place of abode." Mich. Comp. Laws § 750.110a(1)(a). Powell argues that the evidence was insufficient because the house he entered was not a "dwelling"

as defined by statute. He contends that because the house had been condemned and there was nobody living there at the time of his entry, it did not constitute a "dwelling." Relying on its prior decision in *People v. Traylor*, 298 N.W.2d 719 (1980), the Michigan Court of Appeals rejected this argument.

In *Traylor*, the court explained that a house used as a place of abode constitutes a dwelling, regardless of whether the house is presently occupied. *Id.* at 722. Thus, "[w]hen an inhabitant intends to remain in a dwelling as his residence, and has left it for a temporary purpose, such absence does not change the dwelling into an unoccupied one in the eyes of the law." *Id.* Instead, "[t]he intent to return following an absence controls; the duration of the absence is not material. Nor is the structure's habitability germane." *Id.* The trial court relied on this language from *Traylor* almost verbatim in its jury instruction as to the home invasion charge.

On direct appeal, the state appellate court relied on the statutory definition of dwelling in § 750.110a(1)(a) and its prior decision in *Traylor* in concluding that "the intent of the inhabitant to use a structure as a place of abode is the primary factor in determining whether it constitutes a dwelling for purposes of MCL 750.110a(3)." *Powell*, 750 N.W.2d at 609. Because the homeowner testified that he was absent only because of the fire, intended to return to the home, and indeed was living in the home at the time of the trial, the court concluded that "a rational trier of fact [could] find beyond a reasonable doubt that defendant entered a dwelling within the meaning of the home-invasion statute." *Id.* We cannot conclude that this determination was objectively unreasonable. Accordingly, Powell's insufficiency claim fails.

Powell's argument that we must wade into the morass of state law to determine whether the Michigan courts' definition of "dwelling" accurately reflected Michigan law at the time of Powell's offense is not well taken. This argument inappropriately invites us to superintend the Michigan courts in determining what is essential to establish the element of a "dwelling" under state law. We have, in the past, distinguished between "pure sufficiency claims" and "state law claims disguised as *Jackson* claims" on nearly identical footing. *Sanford v. Yukins*, 288 F.3d 855, 860–62 (6th Cir. 2002) ("What is essential to establish an element, like the question whether a given element is necessary, is a question of state law. To say that state law 'rightly understood' requires proof of [a factual predicate], and that the evidence is insufficient because the prosecution failed to establish this, is to use *Jackson* as a back door to review questions of substantive law." (citation omitted)). Powell's argument is a state law claim disguised as a *Jackson* claim. Accordingly, it is not cognizable on federal habeas review. *Id.* at 862.

## B. Ineffective Assistance of Trial Counsel

In his second assignment of error, Powell argues that the district court improperly denied his ineffective assistance of trial counsel claim. Powell contends that trial counsel was constitutionally ineffective in two respects: (1) by failing to object to the allegedly improper jury instruction; and (2) by failing to investigate or challenge the admissibility of Powell's incriminating post-arrest statement. Powell's claim is defaulted as to counsel's failure to object to the jury instruction, and he loses on the merits as to counsel's handling of the post-arrest statement.

A claim is procedurally defaulted and is thus unreviewable by a federal habeas court where the "habeas petitioner fail[ed] to obtain consideration of [that] claim by a state court . . . due to the

petitioner's failure to raise that claim before the state courts while state-court remedies [were] still available." *Seymour v. Walker*, 224 F.3d 542, 549–550 (6th Cir. 2000). Here, Powell failed to raise the issue of his trial counsel's ineffectiveness as it related to the jury instruction while in state court. Powell seems to allege that because he raised *some* ineffective assistance claims while in state court, he has preserved *all* claims for this federal habeas petition. Not so. When a habeas petitioner raises multiple claims of ineffective assistance of counsel, we review those claims for procedural default on a claim-by-claim basis. *See Seymour*, 224 F.3d at 554–55. Preserving one claim by raising it in state court does not preserve all claims for our review. *See id.* Accordingly, Powell has defaulted on his ineffective assistance claim as it relates to the allegedly improper jury instruction.

Powell has preserved his ineffective assistance claim as it relates to counsel's handling of the post-arrest statement because he raised this claim on direct appeal in state court. Here again, we apply two levels of deference in reviewing Powell's claim: one level of deference under the familiar standard from *Strickland v. Washington*, and another level of deference to the state court's application of *Strickland* to the facts of the case. *Richter*, 131 S. Ct. at 788. As the Supreme Court has stated, "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Id.* (internal citations and quotation marks omitted).

To have been entitled to relief from the Michigan Court of Appeals, Powell had to show both that his trial counsel provided deficient performance and that there was prejudice as a result. *Strickland*, 466 U.S. at 687. To establish deficient *performance*, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." *Id.*

at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation fell within the "wide range" of reasonable professional conduct. *Id.* at 689. The defendant's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

To establish *prejudice*, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Instead, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Powell contends that trial counsel was ineffective for failing to investigate the circumstances surrounding his post-arrest statement, for failing to move to suppress it, and for failing to object to its use at trial. Officer Wood testified during Powell's preliminary hearing and at trial that Powell made an unsolicited statement that "he was removing the scrap from the house." On appeal, Powell implies, but does not declare, that his post-arrest statement violated his Fifth Amendment right against compelled self-incrimination under *Miranda v. Arizona*, 384 U.S. 436 (1966). As such, he faults counsel for not making reasonable investigations as to the admissibility of the statement or for seeking to exclude it.

Powell's argument is too attenuated to survive AEDPA review of a *Strickland* claim. Under clearly established federal law, it was *Powell's* burden to demonstrate both that counsel's performance was deficient and that he was prejudiced as a result. *Strickland*, 466 U.S. at 687. Yet Powell failed to present *any* evidence to the Michigan Court of Appeals to show that his statement

was anything other than a voluntary admission. Powell declined to testify at trial; Powell did not submit so much as an affidavit to the contrary on appeal; and in the interim, Powell has provided contradictory accounts of what, if anything, he told the police. Powell's only argument on this point is that Officer Wood provided ambiguous testimony regarding the events immediately following Powell's arrest, and that as a result, his counsel was required to "follow through" to determine whether a custodial interrogation had occurred. Even accepting Powell's unsworn and unsupported allegations at face-value, there are "reasonable argument[s] that counsel satisfied *Strickland*'s deferential standard," and that is sufficient to deny habeas relief. *Richter*, 131 S. Ct. at 788.

Officer Wood testified during the preliminary hearing that after placing Powell under arrest, "We asked him if—," before being cut off by Powell's attorney. And on cross-examination at trial, Officer Wood acknowledged that he asked Powell "if anyone else was in the house and he—," before being cut off again. Asking a criminal suspect, found hiding in a freezer in an abandoned house, if anyone else was in the immediate vicinity is exactly the type of question "necessary to secure [the officer's] safety" that the Supreme Court has excluded from the *Miranda* rule. *See New York v. Quarles*, 467 U.S. 649, 658–59 (1984). This question, standing alone, does not undercut Officer Wood's otherwise uncontroverted testimony that Powell's admission was "unsolicited." Accordingly, counsel may not have felt obligated to challenge the admissibility of the statement.

We can surmise other related justifications for counsel's decisions. Perhaps counsel hoped to avoid drawing further attention to what he felt was a damaging but otherwise admissible confession. Or maybe counsel hoped to prevail on other elements of the case, including the dispute

over whether Powell was in a "dwelling" at the time of arrest. We need not settle on one, or any, justification today. *Strickland* itself warned against this type of second-guessing. 466 U.S. at 689.

Even assuming Powell could overcome the burden of demonstrating counsel's deficient performance (which he cannot), nothing suggests he could prove that he was prejudiced as a result. Powell submitted no evidence that the trial court would have excluded Officer Wood's testimony if counsel had so requested. Nor, for that matter, did Powell present any evidence that if his admission *had* been excluded, he stood a reasonable probability of acquittal. As the court of appeals's recitation of the evidence suggests, there was ample circumstantial evidence with which to convict. *See Powell*, 750 N.W.2d at 609–10. Viewed most charitably, Powell's argument still falls short of proving that he was prejudiced as a result of counsel's alleged ineffectiveness. Accordingly, Powell's ineffective assistance of trial counsel claim is without merit.

## C. Ineffective Assistance of Appellate Counsel

In his third assignment of error, Powell argues that the district court improperly denied his ineffective assistance of *appellate* counsel claim. Powell contends that appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel predicated on the same perceived deficiencies discussed above. As this is largely a derivative claim, we cannot conclude that the Michigan trial court unreasonably applied clearly established federal law in rejecting it.

An ineffective assistance of appellate counsel claim requires a petitioner to show that counsel's performance was deficient, and that the deficient performance was prejudicial. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000). In evaluating the performance of appellate counsel, it is well settled that "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but

rather may select from among them in order to maximize the likelihood of success on appeal." *Id.* at 288 (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Generally, the presumption of effective assistance of counsel will not be overcome unless the ignored issues are clearly stronger than those presented on appeal. *Id.* Further, to demonstrate prejudice in this context, a petitioner must show a reasonable probability that his claims would have succeeded on appeal. *Id.* at 285–86.

After reviewing Powell's motion for post-conviction relief, the Michigan trial court concluded that Powell failed to satisfy either prong of proving ineffective assistance of appellate counsel. This determination was consistent with clearly established federal law. As discussed above, the record established that Powell's statement to the police was voluntary and unsolicited, and Powell's own recollection of the events was inconsistent at best. Therefore, appellate counsel had reason to believe that an ineffective assistance claim predicated on Powell's admission was without merit. Counsel did all that we require in framing the appeal: he sifted through the universe of potential claims and winnowed the list to those he deemed most likely to succeed. *Id.* at 288. Powell has not shown that the ignored claim is stronger than those raised on appeal. Accordingly, he cannot overcome the presumption of effective assistance of counsel.

Further, and more damaging to Powell's argument, he cannot show that he was prejudiced as a result of counsel's alleged deficient performance. Powell raised the issue of ineffective assistance of trial counsel in his pro se supplemental brief, but the state appellate court rejected the claim. *Powell*, 750 N.W.2d at 611. Thus, Powell cannot make a required showing that, but for counsel's decision to omit the claim, he would have succeeded on appeal. *See Robbins*, 528 U.S. at 285–86. Accordingly, his ineffective assistance of appellate counsel claim is without merit.

## IV.  CONCLUSION

For the foregoing reasons, we affirm the district court's order denying habeas relief.